HORACE MANN MUTUAL CASUALTY COMPANY, an Illinois Corporation, Plaintiff,

v.

Howard K. BELL, James Mayer, Leo Joe Wesley, J. L. Martin, James Bellar, Jack Rose, Mildred Rose, Cleveland Holland and Bertha Holland, Defendants.

Civ. A. No. 1200.

United States District Court W. D. Arkansas, Fort Smith Division.

Sept. 30, 1955.

Daily & Woods, Fort Smith, Ark., for plaintiff.

Heartsill Ragon, Paul Gutensohn, Charles A. Beasley, Fort Smith, Ark., Scott & Goodier, Dardanelle, Ark., for defendants.

**308**

JOHN E. MILLER, District Judge.

Statement

On August 31, 1955, this case was tried to the Court, without a jury, and at the conclusion of the trial the Court orally announced its decision in favor of the plaintiff. The Court requested counsel for plaintiff to prepare formal findings of fact and conclusions of law. Plaintiff complied with Court's request, and on September 1, 1955, the Court filed the findings of fact and conclusions of law prepared by plaintiff's attorney. On the same date the Court entered its judgment in favor of plaintiff in accordance with the conclusions of law.

On September 8, 1955, the defendants filed a motion for new trial, and subsequent thereto the parties filed memorandum briefs in support of and in opposition to the motion. Thus the motion is now ready for final disposition. After fully considering the motion, the Court has concluded that the original findings of fact, conclusions of law, and judgment were and are erroneous, and should be amended, and that a judgment should be entered in accordance with the amended findings of fact and conclusions of law.

Findings of Fact (As Amended)

1.

Plaintiff issued to the defendant Bell its policy of automobile liability insurance describing a 1950 Plymouth Deluxe four-door sedan which was owned and used by the defendant for pleasure and business as a family car prior to and subsequent to the month of February, 1955. Prior to February 26, 1955, the above-described automobile was the only automobile owned by said defendant. The policy afforded coverage for bodily injury, property damage, comprehensive and $50 deductible collision.

2.

On the afternoon of February 26, 1955, the defendant Bell purchased and received delivery from Koch Auto Sales, Dardanelle, Arkansas, a 1952 Studebaker half-ton pickup truck, paying $50 down and executing his instalment note for the deferred balance of the agreed purchase price plus the amount of an insurance premium for a policy insuring the Studebaker truck against comprehensive and $50 deductible collision issued by the General Bonding and Insurance Company, which policy was orally bound and put into effect by that company's agent at the time of the delivery of the truck on the afternoon of February 26, 1955, and which policy named Howard K. Bell as insured and Bank of Russellville, as its interest might appear.

The defendant Bell had nothing to do with the purchase of insurance on the pickup truck. This transaction was handled entirely by Koch Auto Sales and Nobel Campbell, insurance agent of General Bonding and Insurance Company, and, as a matter of fact, Campbell handled the insurance on all of Koch's sales.

3.

Defendant Bell purchased the pickup truck to conserve his automobile and eventually to replace it. The truck was to be used both in the performance of his duties as vocational instructor of agriculture at the Dardanelle, Arkansas, high school, and for personal, pleasure, family and business purposes. In other words, the pickup truck was to be used for the same purposes his automobile had been and was being used.

4.

On the morning of February 28, 1955, said truck was being used by Bell in the performance of the duties of his occupation as such instructor in the conduct of one of his classes and was with his permission being driven by one of his students and occupied by three others of his students when it was involved in a collision on State Highway 22 at the entrance to the farm on which Bell conducted classes and with a car owned, driven and occupied by the defendants, Holland and Rose and their wives, resulting in damages to the Rose car and personal injuries to Mr. Rose and Mr. and Mrs. Holland.

**5.**

The defendants, Holland and Rose and their wives, are asserting claims for damages against the other defendants by reason of said collision between the Rose car and Bell's Studebaker truck.

**6.**

Plaintiff, at the time of the issuance of its policy of insurance described in Finding No. 1 above, and on all dates subsequent thereto, had filed with the office of the Commissioner of Insurance of Arkansas rates for the types and kinds of property damage and public liability automobile insurance coverage which it was authorized to write in this State. Plaintiff had filed rates for private passenger automobiles to be used for "pleasure and business" and same had been accepted and approved by the State Insurance Commissioner. Plaintiff had notified the State Insurance Commissioner in writing that it did not write policies on motor vehicles for "commercial" use and had filed no rates with the Insurance Commissioner for that type of coverage and was not authorized to insure motor vehicles for commercial use in the State of Arkansas at the time of the issuance of its policy described in Finding No. 1 above nor at any time subsequent thereto.

**7.**

Defendant Bell's said Studebaker pickup truck was an additional vehicle and did not replace the 1950 Plymouth four-door sedan described in the plaintiff's policy referred to in Finding No. 1 above.

**8.**

In Arkansas farm pickup trucks are customarily rated as private passenger automobiles for purposes of liability insurance.

**9.**

The policy in question provides, inter alia:

"The purposes for which the automobile is to be used are 'pleasure and business', unless otherwise stated herein. (a) The term 'pleasure and business' is defined as personal, pleasure, family and business use.

(b) The term 'commercial' is defined as use principally in the business occupation of the named insured as stated above, including occasional use for personal, pleasure, family and other business purposes."

**10.**

The policy further provides:

"V. Automobile Defined, Trailers, Two or More Automobiles, Including Automatic Insurance

"(a) Automobile. With respect to the insurance under coverages A and B, the word 'automobile' means a land motor vehicle, trailer or semi-trailer other than farm tractors and trailers not subject to motor vehicle registration and farm implements.

"With respect to the insurance under the other coverages, except where stated to the contrary, the word 'automobile' means:

\* \* \* \* \* \*

"(4) Newly Acquired Automobile—an automobile, ownership of which is acquired by the named insured who is the owner of the described automobile, if the named insured notifies the company within thirty days following the date of its delivery to him, and if either it replaces an automobile described in this policy or the company insures all automobiles owned by the named insured at such delivery date; but the insurance with respect to the newly acquired automobile does not apply to any loss against which the named insured has other valid and collectible insurance. The named insured shall pay any additional premium required because of the application of the insurance to such newly acquired automobile."

**11.**

Shortly after the accident, and before thirty days had elapsed since the purchase of the pickup truck, the defendant Bell notified plaintiff of the acquisition of the truck and of the accident.

Bell had intended to purchase his liability insurance on the pickup truck

from the plaintiff, but did not have time to do so before the accident.

### Discussion

■ The insurance clause in question, which is often designated as an "automatic insurance" provision, provides that the insurance applies to a newly acquired automobile if proper notice is given and "if either it replaces an automobile described in this policy *or* the company insures all automobiles owned by the named insured at such delivery date."

The evidence in the instant case clearly establishes that the pickup truck purchased by the defendant Bell did not replace the Plymouth automobile described in the policy. Compare, Mitcham v. Travelers Indemnity Co., 4 Cir., 127 F.2d 27. Thus the crucial question is whether the plaintiff insured "all automobiles owned by the named insured" at the delivery date.

At the time of the trial the Court was of the opinion that this alternative provision applied only to blanket or fleet insurance, and apparently this is the construction placed upon similar policy provisions by the author in Volume 7, Appleman's Insurance Law and Practice, Section 4293. There is also some dictum in Home Mutual Ins. Co. of Iowa v. Rose, 8 Cir., 150 F.2d 201, 204, tending to support the Court's original opinion that the clause applied solely to blanket or fleet insurance. However, Appleman cited no authority supporting his theory, and in addition, the standard policy provisions have been changed since the publication in 1942 of Volume 7.

Apparently the particular provision involved herein has been construed in only one case. In Birch v. Harbor Ins. Co., 126 Cal.App.2d 714, 272 P.2d 784, 786, the Court had before it for consideration precisely the same clause that is involved here. In that case the appellant insurance company contended:

"* * * that the Chevrolet was an additional car rather than a replacement; that the clause with respect to the company insuring all automobiles owned by the insured

was 'designed to cover situations in which an assured has a constant normal turnover of vehicles' and where the newly acquired vehicles will be identified and added to the policy at a later date, usually the end of the month; and that the provision that the insured shall pay any additional premium required indicates that 'the insurer recognizes no obligation to furnish free insurance other than as specifically set forth.'"

After considering the question of notice, which was the primary question, the Court at page 788 of 272 P.2d said:

"While most of the cases above cited were 'replacement' cases and some of them contain a provision terminating the coverage on a described car in that event, the policy provision here in question was not confined to any such replacement or such a termination with respect to the described car. It is obviously not limited to some change of situation with respect to the described automobile, and it refers to 'an automobile' and not to any 'constant normal turnover' of vehicles. This provision is in the alternative, applicable either if a newly acquired car is a replacement or if at its delivery date the company insures all automobiles then owned by the insured. The court found, on undisputed evidence, that the latter situation here existed. No good reason appears why the principles applied in the cited cases should not be equally applicable here, since this alternative provision was included in the policy."

As above stated, the Birch case seems to be the only one which has construed the exact clause involved herein, but in the case of Dunmire Motor Co. v. Oregon Mutual Fire Ins. Co., 166 Or. 690, 114 P. 2d 1005, the Court construed an automatic coverage clause which was similar to the one in the instant case. At page 1008 of 114 P.2d the Court said:

"* * * The appellant contends that in order for the assured to

have the benefit of the automatic coverage provision he must, under the condition just quoted, be the owner of more than one automobile and all his automobiles must be insured by the defendant, and that since White owned only one automobile at the time he acquired the Packard, the automatic coverage did not extend to the Packard car.

"It is our opinion that, taking the automatic coverage provision in its entirety, it was intended to apply to any other automobile acquired by the assured who owned one or more automobiles, provided that all the automobiles, whether one or more, then owned by him were insured by the defendant corporation. This construction is made obvious also when we consider the quoted clause in connection with another condition of the automatic coverage provision, to the effect that if all the automobiles owned by the assured are not covered by insurance in the defendant company, the automatic coverage does not apply except to any automobile that replaces one insured by the defendant."

A similar provision was also construed in Koehn v. Union Fire Ins. Co., 152 Neb. 254, 40 N.W.2d 874. In that case the insured owned one passenger automobile which was covered by a policy containing an automatic insurance clause. While that insurance policy was in effect the insured purchased a 2-ton truck which was an additional vehicle. The truck was involved in an accident, and the question arose as to whether it was covered under the automatic insurance provision. At page 880 of 40 N.W.2d the Court said:

"The policy involved provides coverage whenever the insured acquires ownership of an additional automobile and the company insures all his automobiles, and if the additional automobile may be classified for the purposes of use stated in the policy. The situation involved in this case does not meet the second requirement."

In other words, the Court apparently holds that the clause could apply even though the insured owned only one vehicle, but the Court went on to hold that the insurance on the passenger automobile could not be extended to the 2-ton truck, since the truck was clearly a commercial vehicle.

After reconsidering the case, the Court is convinced that the Arkansas law would be and is in accord with the decision in Birch v. Harbor Ins. Co., supra, and therefore that the automatic insurance provision applies whether the insured owns one or more vehicles. In the instant case, the insured owned one automobile and it was insured by the plaintiff. Thus, plaintiff insured "all automobiles owned by the named insured".

At the trial plaintiff made no contention that the automatic insurance clause would not apply where the insured owned only one automobile and apparently conceded that the provision did apply in such a case. But plaintiff contended at that time, and still contends, that the clause is inapplicable under the facts in the instant case.

Plaintiff's first contention is that it did not insure all automobiles owned by the defendant Bell. This contention is based on the fact that when Bell purchased the pickup truck, collision and comprehensive insurance was obtained on the truck from another insurance company. However, the policy was required and obtained by the seller of the truck as further security for the payment of the balance of the purchase price of the truck. This contention of plaintiff must fail for the reason that the clause merely requires that the company insure all automobiles owned by the insured "at such delivery date". At the delivery date, and in fact until Bell acquired ownership of the pickup, Bell owned only one automobile, and as above stated, it was insured by the plaintiff. If the insured were required to have insurance with the company on the newly acquired automobile at the delivery date in order to come within the requirement that the company insure "all automobiles owned by the named insured at such delivery

date", the automatic insurance provision applying to newly acquired automobiles would be rendered nugatory.

It is true, as plaintiff contends, that the purpose of this clause is to encourage the insured to insure all his vehicles with the company, and it is further true that when the insured acquires an additional vehicle, which is not a replacement, the clause is inapplicable unless all the insured's vehicles, whether one or more, are then insured by the company. But, there is nothing to require the insured to insure his newly acquired vehicles with the company in order to take advantage of the 30-day automatic insurance on the new vehicle. For that matter, he may wait 30 days, having free automatic insurance during that time, and then purchase insurance on the new vehicle from another company. Stated differently, the consideration for the automatic insurance clause is not, as plaintiff contends, the purchase of insurance on the newly acquired vehicle by the insured. Rather, the consideration is the premium or premiums paid by the insured on his previously owned vehicles, whether one or more.

Therefore, the fact that Bell's new pickup truck was partly insured by another company does not preclude the operation of the automatic insurance clause.

 Plaintiff's remaining contention is that the insurance on a newly acquired vehicle is limited to the type of insurance which was in effect on the previously owned vehicle or vehicles; that in the instant case plaintiff's original vehicle was a Plymouth automobile which was used for business and pleasure, but that the newly acquired vehicle was a pickup truck which was a commercial vehicle. Plaintiff further contends that it had no authority to issue insurance on commercial vehicles in the State of Arkansas, and that any construction of the insurance policy which would require it to insure a commercial vehicle should be avoided. The difficulty with this contention of plaintiff is that the pickup truck was not a commercial vehicle. The policy in question defines the term "pleasure and business" as personal, pleasure, family, and business use. The policy defines the term "commercial" as use principally in the business occupation of the named insured, including occasional use for personal, pleasure, family and other business purposes.

In the instant case the pickup truck was not to be used "principally" in the business occupation of the insured, Bell. The pickup was to be used for personal, pleasure, and family use, and also in connection with his occupation.

The determining factor is that the pickup truck was to be used for exactly the same purposes as the Plymouth had been and was being used. Therefore, if the Plymouth automobile was being used for "pleasure and business" within the terms of the policy, the pickup truck was also to be used for pleasure and business. Likewise, if the company had authority to insure the Plymouth automobile for the purposes it was being used, it had authority to insure the pickup truck for the same purposes.

Insurance provisions governing the use of insured vehicles, just as other insurance provisions, are construed liberally in favor of the insured. See, Commercial Standard Ins. Co. v. Blankenship, 6 Cir., 134 F.2d 784; E. T. & W. N. C. Transportation Co. v. Virginia Surety Co., D.C.Tenn., 129 F.Supp. 305; Hawkeye Casualty Co. v. Harper, D.C.Mo., 84 F.Supp. 11; Firemen's Ins. Co. of Newark v. Rye, 160 Ark. 212, 254 S.W. 465.

The Court is convinced that the pickup involved herein was not a commercial vehicle, and therefore plaintiff's contention in this regard cannot be sustained.

The Court has amended its findings of fact, and in accordance with the preceding discussion the Court must also amend its conclusions of law and judgment. The facts were fully developed at the trial and no good purpose would be served by a new trial.

Conclusions of Law (As Amended)

1.

The Court has jurisdiction of the parties to and the subject matter of this action.

2.

Plaintiff's policy of automobile liability insurance described in Findings of Fact No. 1 did insure the defendant Bell's 1952 Studebaker truck against bodily injury or property damage growing out of its collision with the automobile owned, driven, and occupied by the defendants, Rose and Holland and their wives, on February 28, 1955, and plaintiff is obligated under its said policy to defend any claims asserted by the defendants Rose and Holland and their wives growing out of said action, and to pay any judgments which said defendants may obtain against the defendant Howard K. Bell, or any of the defendants who were using the pickup truck with Bell's permission, subject, however, to the limitations of liability stated in the policy.

3.

The judgment of the Court heretofore entered on September 1, 1955, should be set aside and a judgment in accordance with the foregoing discussion and conclusions of law should be entered.