**INLAND MUTUAL INSURANCE COMPANY, a body corporate,**

v.

Clifton William **STALLINGS**; Thomas W. Smack, Infant; John D. Ramsey and Nellie Ramsey, surviving parents of Russell L. Ramsey, deceased; John D. Ramsey, Administrator of the Estate of Russell L. Ramsey, deceased; Rita Lucille Rodda, Infant; Malcolm B. Burton, Infant; Malcolm V. Burton; and Mary Bobb Burton.

Civ. No. 9531.

United States District Court
D. Maryland,
Civil Division.

May 29, 1958.

714

Sherbow & Sherbow, Theodore Sherbow and Edward F. Shea, Jr., Baltimore, Md., for plaintiff.

Clifton William Stallings, defendant, in pro. per.

Robert E. Coughlan, Jr., Baltimore, Md., for Thomas W. Smack, infant, defendant.

Louis L. Goldstein, Prince Frederick, Md., and Melvin J. Sykes, Baltimore, Md., for Nellie Ramsey and John D. Ramsey, individually and as administrator of the estate of Russell L. Ramsey, defendants.

J. Wilmer Johnson, Prince Frederick, Md., and Buckmaster, White, Mindel & Clarke, Everett L. Buckmaster and Samuel D. Hill, Baltimore, Md., for Rita Lucille Rodda, infant, defendant.

Clater W. Smith, M. King Hill, Jr., and Herbert F. Murray, Baltimore, Md., for Malcolm B. Burton, infant, Malcolm V. Burton, Mary Bobb Burton and Nationwide Mutual Ins. Co., defendants.

ROSZEL C. THOMSEN, Chief Judge.

This action by an insurer which had issued an automobile liability policy and certified it to the Department of Motor Vehicles as proof of the named insured's continuing financial responsibility, seeks a declaratory judgment with respect to the obligations of the company to the named insured (Stallings) and to persons injured by his negligence in operating an automobile on July 14, 1956. The automobile which Stallings was operating at the time of the accident was not the automobile described in the policy, but the policy contained a "Newly Acquired Automobile Clause", and had been certified by the insurer to the Department not only as covering a particular automobile, but also as an "Operator's Policy", so that Stallings could obtain an unrestricted operator's license.

The insurer (Inland) contends that it is not obligated to defend suits brought against Stallings by persons injured in the accident, nor to pay any judgments which may be rendered against him in such suits. Two related questions are presented:

A. Whether, as between the insurer and the named insured, the insurer is obligated to defend such suits and to indemnify the insured against any judgments recovered therein. The answer to this question turns upon the provisions of the policy.

B. Whether, as between the insurer and the persons injured in the accident, the insurer is liable for such judgments, even though it might be entitled to indemnity from its insured for any payments so made. The answer to this question requires a consideration not only of the provisions of the policy, but also of the Maryland Financial Responsibility Law and the SR 22 certificate which the insurer sent to the Department.

Facts

On July 10, 1955, Stallings' operator's license was revoked, under Md.Code, 1957, Art. 66½, sec. 104(b), because while still under twenty-one years of age he had been convicted of three offenses involving a motor vehicle actually in motion. The registration certificate for his automobile was thereupon suspended, as required by sec. 118(a). Before either his operator's license or his registration certificate could be reissued by the Department of Motor Vehicles, he was required to give "proof of his continuing financial responsibility in the future." Sec. 118(b). The relevant statutes are set out in note[1], below.

1. Annotated Code of Maryland, 1957 ed., Art. 66½:

"§ 118. Owners and operators of motor vehicles after certain convictions.

Except as provided in secs. 139 and 140, proof of continuing financial responsibility by an offender such as Stallings must be offered with respect to all mo-

"(a) *Suspension of motor vehicle registrations when owner's driving permit suspended.*—Whenever the Department is required under any law of this State to revoke the operator's or chauffeur's license of any person upon receiving record of the conviction of such person for any offense under the motor vehicle laws of this State, the Department shall suspend any and all of the registration certificates or cards and registration plates issued for any motor vehicle registered in the name of the person so convicted as owner except that it shall not suspend such evidences of registration in the event such owner has previously given or shall immediately give and thereafter maintain proof of financial responsibility in the manner specified by this article with respect to each and every motor vehicle owned and registered by such person.

"(b) *Proof of financial responsibility prerequisite to renewal of registration.*—The suspensions or revocations hereinbefore required shall remain in effect and the Department shall not issue to any such person any new license or any renewal of license or register or re-register in the name of such person any motor vehicle until permitted under the motor vehicle laws of this State and not then unless and until said person gives proof of his continuing financial responsibility in the future. If at any time in the future, any such person shall fail to retain adequate proof of financial responsibility by maintaining automobile liability and property damage insurance, as defined by § 122 of this article, the suspension or revocation of the license shall immediately again become effective and shall remain effective unless and until such person gives proof of his continuing financial responsibility in the future."

"§ 131. Policy of insurance as proof of financial responsibility.

"A policy of insurance, as that term is used in this article, when offered as proof of financial responsibility under this article, shall mean an automobile public liability and property damage policy, issued by an insurance carrier authorized by the Commissioner of Insurance of the State of Maryland to transact business in this State.

\* \* \* \* \*

"A policy or policies of insurance shall provide insurance, in the name of the person insured, to apply to all motor vehicles owned by the person insured; and in addition thereto shall provide insurance, in the name of the person insured, to apply to any motor vehicle operated by, but not owned by the person insured.

"(a) Such policy of insurance shall meet the requirements enumerated hereunder when:

"(1) It shall designate by explicit description or appropriate reference all motor vehicles to be insured therein;

"(2) It shall specify the name, address and occupation of the person insured;

\* \* \* \* \*

"(5) It shall provide insurance for every insured person on account of legal liability for damages arising out of the ownership, operation, maintainance or use of any motor vehicle explicitly described or appropriately referred to in the said policy; \* \* \*"

§ 134. Amount of proof of financial responsibility required.

\* \* \* \* \*

"(b) *Injury to or death of persons.*—Proof shall be provided in an amount not less than ten thousand ($10,000.00) dollars for damages, including damages for care and loss of services, because of bodily injury, including death at any time resulting therefrom, sustained by any one person in any one accident, and subject to that limit for each person, in an amount not less than twenty thousand ($20,000.00) dollars for damages, including damages for care and loss of services, because of bodily injury, including death at any time resulting therefrom, sustained by more than one person in any one accident.

\* \* \* \* \*

"(d) *Person owning two or more vehicles.*—Whenever proof of financial responsibility is required of a person owning two or more motor vehicles, the proof shall be for each motor vehicle in each accident in the amounts specified in paragraphs (b) and (c) of this section. \* \* \*"

§ 139. Restriction in operating motor vehicles when proof of financial responsibility has been filed.

"(a) *Designation of vehicles.*—When proof of financial responsibility is required under §§ 118 and 119 of this article, and such proof is filed with and accepted by the Department, applying to motor vehicles owned by the person filing the said proof, it shall be unlawful for such person to operate any other motor vehicle within this State, unless or until

tor vehicles owned by him and with respect to his operation of *any* motor vehicle. Sec. 139(a) permits filing of proof applying only to motor vehicles owned by the person filing the proof. If such limited proof is filed, it is unlawful for such person to operate any other motor vehicle within the state, and that restriction is endorsed on his operator's license. That restriction may be removed "by filing proof of financial responsibility as required by this article by means of an operator's policy of insurance, insuring such operator or chauffeur while operating any motor vehicle." Sec. 139(b). Sec. 140 deals with persons who do not own any motor vehicle, and does not apply in this case.

Stallings purchased a 1951 Ford in October, 1955. In December, 1955, he obtained from State Farm Mutual Insurance Company a policy covering the 1951 Ford, which was certified under sec. 139(a); his operator's license was endorsed to restrict him to the operation of that automobile. The State Farm policy was cancelled for non-payment of premium, but on February 10, 1956, Inland, through its agents, Davis & Davis, issued to Stallings an automobile liability policy covering the 1951 Ford, with an "Operator's Only Endorsement" attached, which provided coverage for Stallings while operating or using any private passenger automobile, provided, among other things, that such automobile was not owned in whole or in part by or registered in the name of Stallings. The policy, however, contained the customary "Financial Responsibility Laws" provision and a "Newly Acquired Automobile Clause." See note 2.

It was understood by both Inland and Stallings that the policy was to be certified under sec. 139(b), so that the restriction could be removed from his operator's license. Accordingly, Inland sent an SR 22 to the Department, which read as follows:

"The company * * * hereby certifies that there is in effect * * a motor vehicle liability policy, as defined in Sections 107 to 130 incl. [now 109–134], of the Motor Vehicle Law of Maryland, issued by the company to

Clifton William Stallings

Barston P. O., Calvert County, Maryland
Policy Number 98860     Effective from 2–10–56 to 2–10–57

      \*      \*      \*      \*      \*      \*      \*      \*

Bodily Injury Liability x   Property Damage Liability x   applicable with respect to:

1.   The motor vehicle described herein
Operator's policy 1951 Ford 4 dr. sedan Serial No. BICS-111653

      \*      \*      \*      \*      \*      \*      \*      \*

2.   Operator's Policy   x

Dated 2–9–56     Inland Mutual Insurance Company."

such other vehicle be specifically designated or appropriately referred to in the proof filed. The Department shall endorse notice of such restriction upon the operator's or chauffer's (sic) license of such person. Violation of this section shall be deemed a misdemeanor and upon conviction shall be punishable by a fine of ten dollars ($10.00) to one hundred dollars ($100.00).

"(b) *Removal of restriction.*—Such operator or chauffeur so restricted may have such restriction removed by filing proof of financial responsibility as required by this article by means of an operator's policy of insurance, insuring such operator or chauffeur while operating any motor vehicle. * * *

"§ 140.   Operator's insurance policy.
"When the person required to give

Thereafter, early in May, 1956, Stallings purchased a 1948 Ford for $48. Title to that car was transferred to Stallings on May 4. He drove the car to his home but it was in no condition for regular operation, and in June, 1956, he traded it in to Dorsey Gray, the Ford dealer in Calvert County, Maryland, on a 1950 Ford. Stallings delivered the 1948 Ford to Gray, together with an assignment of the title thereto, about one week before July 3, the date on which Gray delivered the 1950 Ford to him. The tags from the 1948 Ford were transferred to the 1950 Ford on July 6, 1956, and the titles to the two cars were transferred on the records of the Department on July 14, 1956. From July 3 to July 14, 1956, Stallings drove the 1950 Ford to and from work and his father drove the 1951 Ford to and from work.

Stallings did not advise Inland of the acquisition of the 1948 Ford, and did not advise it of the acquisition of the 1950 Ford before the accident of July 14, 1956. That accident occurred on Route 2, a public highway of the State of Maryland in Calvert County. Three automobiles were involved: the 1950 Ford operated by Stallings, an automobile operated by Malcolm R. Burton, and an automobile operated by Thomas W. Smack. Russell L. Ramsey, a passenger in the Stallings' car, was killed; Stallings, Smack and Rita Lucille Rodda, an infant passenger in Smack's car, sustained personal injuries.

Stallings was in the hospital for seven or eight days. On July 16, two days after the accident, he requested his mother to see Louis Goldstein, a Calvert County attorney, and have him notify Inland of the accident and of the purchase of the 1950 Ford. Like his father, young Stallings is a carpenter, and Goldstein had been the family lawyer. The mother took the Inland policy to Goldstein and requested him to report the accident to

proof of financial responsibility is not the owner of a motor vehicle, such person may give proof of financial responsibility as required by this article by

inland. Goldstein kept the policy, but later advised Stallings and his family that he had decided to represent the estate of Ramsey, the boy who was killed in the accident. On July 31 Goldstein wrote Inland, giving notice of the accident and stating that he represented Ramsey's estate. This notice was received by Inland on August 3. On August 8, an investigator engaged by Inland went to Calvert County, inspected the 1950 Ford involved in the accident, and obtained a statement from Stallings. Upon completion of the investigation, Inland wrote Stallings disclaiming coverage under the policy for the accident of July 14, 1956.

Thereafter, Smack brought suit in the Circuit Court for Calvert County against Stallings and Burton, and the infant Rodda brought suit in this court against Smack, Stallings and Burton. Inland refused to defend Stallings in either suit. After trial on the merits of the Smack suit in Calvert County, judgment was rendered in favor of Smack against Stallings and Burton. Nationwide, the insurer of Burton, paid the judgment and has filed a counterclaim herein to recover from Inland one-half of that judgment, plus court costs. The Rodda suit in this court is still pending.

### Discussion

A. The Obligation of the Insurer to the Named Insured.

The question whether, as between the insurer and the named insured, Stallings, the insurer is obligated to defend the suits and to pay any judgments recovered therein against Stallings, must be decided under the provisions of the policy itself, unaffected by the Financial Responsibility Law and the SR 22 certificate. Insuring Agreement IV(a) (4), under the heading "Newly Acquired Automobile", extended coverage to "an automobile, ownership of which is acquired by the named insured who is the owner of the described automobile, if the named

means of an operator's policy of insurance, insuring such person in the operation of any motor vehicle."

**718**

insured notifies the company within thirty days following the date of its delivery to him, and if either it replaces an automobile described in this policy or the company insures all automobiles owned by the named insured at such delivery date; but the insurance with respect to the newly acquired automobile does not apply to any loss against which the named insured has other valid and collectible insurance. The named insured shall pay any additional premium required because of the application of the insurance to such newly acquired automobile."

■ 1. It is agreed that the 1950 Ford was not a replacement for the 1951 Ford, which still stood in Stallings' name, although it was being driven by his father. The first question to be considered, therefore, is whether Inland insured "all automobiles owned by the named insured at such delivery date", i. e., the date of the delivery of the 1950 Ford.

(a) Inland first suggests that this alternative provision applies only where the policy was originally issued as a fleet policy or a blanket policy. This suggestion is unsound, for the reasons stated in Horace Mann Mutual Casualty Co. v. Bell, D.C.W.D.Ark., 134 F.Supp. 307, 310.

■ (b) Inland then argues that it did not in fact insure "all automobiles owned by the named insured at such delivery date", July 3, 1956. It is true that in addition to the 1951 Ford, which was the automobile described in the policy, Stallings had purchased a 1948 Ford in May, 1956, for $48, but I have found as a fact that Stallings had delivered the 1948 Ford to Gray, together with an assignment of its title, a week before the 1950 Ford was delivered to Stallings. Literally, therefore, Inland insured all automobiles (the 1951 Ford) "owned by the named insured at such delivery date." The Fourth Circuit construed a similar clause strictly and literally in favor of an insurer in Mitcham v. Travelers Indemnity Co., 4 Cir., 127 F.2d 27. The

comparable clause should be construed literally against the insurer in this case, especially since it prepared the policy.

■ 2. Inland's second point is that the named insured did not notify the company within thirty days following the date of the delivery to him of the 1950 Ford. That is true. But it is also true that the accident happened within the thirty day period. These facts raise two questions: (a) whether, under the clause we are considering, coverage was automatically effected upon the delivery of the new automobile and remained in effect until the end of the thirty day period; and (b) whether the failure of Stallings to give such notice in this case was waived or can be excused.

(a) There is no Maryland case directly in point on the first question. It has been generally held, however, that the requirement of notice is a condition subsequent rather than a condition precedent to extended coverage, and "that such coverage is automatically effected upon delivery of the new automobile and remains in effect until the end of the specified period, irrespective of whether notice has been given or not." 34 A.L.R. 2d at page 944. Many of the cases so holding are replacement cases, but the rule has also been applied in cases similar to the case at bar. See Birch v. Harbor Ins. Co., 126 Cal.App.2d 714, 272 P.2d 784, and cases cited therein. To the contrary is Jamison v. Phoenix Indemnity Co., D.C.D.N.J., 40 F.Supp. 87.

In *Inland Mutual Ins. Co. v. Peterson*, D.C.D.Md., 148 F.Supp. 392, 393, affirmed sub nom. Wilkins v. Inland Mutual Ins. Co., 4 Cir., 253 F.2d 489, a somewhat similar provision was involved —a clause providing that if "the named insured shall die or be adjudicated bankrupt or insolvent within the policy period, this policy, unless cancelled, shall, if written notice be given to the company within sixty days after the date of such death or adjudication, cover (1) the named insured's legal representative as the named insured, and (2) * * * any person having proper temporary cus-

tody of the automobile as an insured, but in no event for a period of more than sixty days after the date of such death or adjudication." I held that giving notice to the insurer within the prescribed period was a condition precedent to the continued liability of the insurer; unless the insurer was notified within the sixty day period, there was no liability for any act occurring after the death of the named insured. 148 F.Supp. at page 398. Speaking for the Fourth Circuit, Judge Haynsworth agreed that the provision is "framed in the language of a condition precedent." He continued, however: "The clear existence of continuing risk assumed in a voluntary contract supported by adequate consideration suggests a pre-existing contractual relation even though the third party beneficiary must make an affirmative and timely election in order to avail himself of the benefits of the contract. The creation of the power, vested in another, by a mechanical act, to clothe himself with substantial rights and impose upon the promisor extensive detriment, suggests that performance of the mechanical act is a condition to the perfection and enforcement of a pre-existing contractual right rather than a condition precedent to the consummation of new contractual relations.

"But whether the condition be designated as precedent or subsequent, written notice is clearly required by the terms of the policy, and, certainly in the absence of legal excuse, compliance is necessary if the liabilities assumed by the company in its policy are to be enforced. Whatever may be said of the language of the provision in other respects, there is no ambiguity in its re-quirement of written notice within the sixty-day period. We cannot read it out of the policy, or assume that the original parties to the contract intended what they clearly disclaimed.

"Should we assume that it is the sort of condition subsequent nonperformance of which may be excused, in an appropriate case, in order to avoid unreasonable forfeiture, the circumstances of the present case do not call for, or permit, an exercise of the power. Neither Mrs. Peterson, the mother, nor the sister nor any brother is shown to have been under any disability, yet no one of them ever made any effort to give the requisite notice." 253 F.2d at pages 491–492.

Judge Haynsworth also said: "We have been referred to no case in which the accident occurred within the notice period and the consequence of the failure to comply with the requirement of notice was in issue." 253 F.2d at page 493. There are, however, a number of cases involving the identical clause under consideration in the instant case, or substantially similar clauses. The clause in the instant case differs in some respects from the clause in the Wilkins-Peterson-Inland case, which involved the substitution, in place of the named insured, of an unknown personal representative, with all of the power of a named insured to extend the coverage under the omnibus clause, a material change in the risk. There is also a change in the risk in the instant case, to be sure, but it involves no change in the named insured; it is a risk which the insurer has stated it is willing to assume, for an additional premium to be paid in the future. See the Newly Acquired Automobile clause, note.[2]

2. *"Insuring Agreements*
  *"IV Automobile Defined, Trailers, Two or More Automobiles, Including Automatic Insurance*
  "(a) *Automobile.* Except where stated to the contrary, the word 'automobile' means:
  "(1) *Described Automobile*—the motor vehicle or trailer described in this policy:
  \* \* \* \* \*

"(4) *Newly Acquired Automobile*—an automobile, ownership of which is acquired by the named insured who is the owner of the described automobile, if the named insured notifies the company within thirty days following the date of its delivery to him, and if either it replaces an automobile described in this policy or the company insures all automobiles owned by the named insured at such delivery date; but the insurance with re-

A majority of the courts which have considered the question have held that an accident during the thirty day period, while the insured is driving the newly acquired car, is covered irrespective of notice. The Fourth Circuit left that question open in Mitcham v. Travelers Indemity Co., 127 F.2d 27. I conclude that the Court of Appeals of Maryland would follow the majority rule.

(b) If, as the weight of authority holds, the condition is a condition subsequent, it can be waived, and may be excused in an appropriate case to avoid unreasonable forfeiture. Wilkins v. Inland Mutual Ins. Co., supra. There is no evidence of waiver in the case at bar, even under the liberal Maryland rule. There is a strong impulse to excuse the failure to notify the insurer, under the facts set out above, but in view of the answer to (a), it is not necessary to decide that issue.

B. The Obligation of the Insurer to the Persons Injured in the Accident.

■ 1. Whatever the obligations of the insurer to the named insured may be under the policy, the persons injured by the negligence of Stallings are entitled to have their rights determined in the light of the Maryland Financial Responsibility Law and the SR 22.

That law provides generally that persons subject to the statute shall file proof of financial responsibility with respect to all motor vehicles owned by them and with respect to their operation of all motor vehicles not owned by them. The statute covers various situations in which proof of financial responsibility is required. An owner's policy, provided for by sec. 131, may cover a fleet of "for rent" vehicles as well as a single automobile owned by a negligent driver. Sec. 139(a), which deals with drivers in the category of Stallings, permits proof of financial responsibility applying only to motor vehicles owned by the person filing the proof. If such limited proof is filed it is unlawful for such person to operate any other motor vehicle within the state, and that restriction is endorsed on his operator's license. The restriction may be removed by filing proof of financial responsibility by means of an operator's policy of insurance, insuring such operator or chauffeur while operating *any* motor vehicle. Sec. 139(b). Sec. 140 permits a person who does not own a motor vehicle to give proof by means of an op-

spect to the newly acquired automobile does not apply to any loss against which the named insured has other valid and collectible insurance. The named insured shall pay any additional premium required because of the application of the insurance to such newly acquired automobile.
\* \* \* "

"*Conditions*
\* \* \* \* \*
"3. Financial Responsibility Laws Coverages A and B

Such insurance as is afforded by this policy for bodily injury liability or property damage liability shall comply with the provisions of the motor vehicle financial responsibility law of any state or province which shall be applicable with respect to any such liability arising out of the ownership, maintenance or use of the automobile during the policy period, to the extent of the coverage and limits of liability required by such law, but in no event in excess of the limits of liability stated in this policy. The insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph.
\* \* \* "

"*Operators Only Endorsement*

"In consideration of the premium specified for this policy, it is understood and agreed that such insurance as is afforded under the terms and conditions of said policy for liability imposed by law upon the insured for injury to or death of any person other than such Insured or for liability for damage to property, applies to the named Insured with respect to his operation or use of any private passenger automobile only of which the Insured is personally in control as driver or occupant, subject to the following provisions:
\* \* \* \* \*

"2. That such automobile is not owned in whole or in part by or registered in the name of the named Insured;
\* \* \* "

erator's policy of insurance, insuring such person in the operation of *any* motor vehicle. There is no provision in the Maryland law which permits the certification of an operator's policy under either sec. 139(b) or 140 limited to automobiles not owned by the insured.

The SR 22 filed by Inland with the Department of Motor Vehicles stated that the policy was issued to Stallings as the owner of the 1951 Ford, and that it was also an operator's policy. It was issued to comply with sec. 139(b), so that Stallings could receive an unrestricted operator's license. The Maryland statute, read into the policy by the clause headed "Financial Responsibility Laws" and by the SR 22 certificate, takes precedence over any limitation in the "Operator's Only Endorsement". As between the insurer and persons injured by Stallings on Maryland highways, that endorsement was conformed to the provisions of sec. 139(b). Keystone Mutual Casualty Co. of Pittsburgh, Pa. v. Hinds, 180 Md. 676, 679, 26 A.2d 761; Wilkins v. Inland Mutual Ins. Co., supra. The policy, therefore, covered Stallings while operating any automobile on Maryland highways, whether the automobile was owned by him or not.[3]

The Department of Motor Vehicles does not approve the form of any policies. The State Insurance Department does approve blank forms of policies, as well as companies authorized to do business in Maryland. However, it is not customary to submit forms of endorsements to the Insurance Department, and there is no evidence that the Insurance Department ever approved the Operator's Only Endorsement involved in this case. Nor could any such approval override the provisions of the Financial Responsibility Law. Indeed, the form of policy approved by the Insurance Department and issued to Stallings contained the customary clause making the policy conform to the Financial Responsibility Law, with the consequences set out in Keystone Mutual Casualty Co. of Pittsburgh, Pa. v. Hinds, supra.

The reason for requiring proof of financial responsibility in this case was because Stallings had himself been guilty of three driving offenses while under twenty-one. The public was interested in seeing that if he was granted an unre-

---

3. In the ordinary automobile policy, issued to A, covering a designated automobile owned by him, with the customary omnibus clause and the customary clause covering A while he is driving other automobiles not owned by him, the insurer may occasionally be at risk on two automobiles at the same time: A's automobile being driven by B, and C's automobile being driven by A. The premium charged takes account of this possibility and of the possibilities of coinsurance involved. Under the Maryland Financial Responsibility Law, an insurer who certifies an owner's and operator's policy under sec. 139(b) not only assumes the risks involved in the ordinary automobile policy, but must insure the named operator while operating *any* motor. vehicle, whether owned by him or not. Although there is dispute about some of the rates, the parties are agreed that the evidence shows that the premium for a policy covering a single automobile which is also certified under sec. 139(b) is higher than the premium charged for an ordinary automobile policy with the customary clauses referred to above in this note. If an insured whose policy has been certified under sec. 139(b) buys a second automobile and does not report it and pay a premium for the additional coverage, as between him and the company there is no coverage except as may be afforded by a newly acquired automobile clause; and as between the insured and the company, the company may recover from him any judgment it may have to pay by reason of having certified the policy as proof of his continuing financial responsibility. Sec. 131(b) (6); Condition 3 of the policy. The purchase of a second automobile by a driver whose license has been revoked, and the failure to report and insure it, probably does not often occur; in any event, the risk of such an occurrence is reflected in the premium charged and should be borne by the insurer rather than by the persons injured through the negligence of the insured, who has been enabled to obtain an unrestricted operator's license as a result of the certification by the insurer that it has issued an operator's policy to the owner of the automobile.

stricted driver's license he should be covered by insurance, whatever car he drove. In this respect the case differs from the Wilkins-Peterson-Inland case, where the offender who had been required to give proof had died, and the statutes did not require extension of the coverage beyond the life of the individual whose conviction had occasioned the certification of the policy. 253 F.2d at page 494.

Inland presents an elaborate argument based on secs. 131 and 134(d), which concludes that the Maryland Act does not require an insurer to discover, and cover, additional vehicles purchased by its insured after its policy is issued; but that it is the duty of the Department to see that such newly acquired automobiles are covered either by the deposit of money or securities or by insurance.

This argument ignores important features of the Financial Responsibility Law, particularly the difference between an owner's policy provided for in sec. 131 and sec. 139(a) and an operator's policy provided for in sec. 139(b). It is true that the Department of Motor Vehicles was negligent in issuing a registration card and license plates on the 1950 Ford without requiring proof of financial responsibility as to that automobile; but the liability here imposed arises out of Stallings' *operation* of the 1950 Ford rather than his ownership of that automobile. If Inland's policy had been certified only as an owner's policy under sec. 139(a), as the State Farm policy had been certified, Stallings' operator's license would have been limited to the operation of the 1951 Ford. But the SR 22 filed by Inland certified that the policy was an operator's policy as well as an owner's policy. Sec. 139(b), therefore, required that it cover Stallings' operation of *any* motor vehicle, and Inland's argument based on secs. 131 and 134(d) loses its force. The policy in Graham v. Iowa National Mutual Insurance Co., 240 N.C. 458, 82 S.E.2d 381, relied on by Inland, was merely an owner's policy insuring a single automobile, and not an operator's policy as well.

In Keystone Mutual Casualty Co. of Pittsburgh, Pa. v. Hinds, supra, the Court of Appeals of Maryland said: "The purpose of legislation of this nature is to assure the ability of motor vehicle owners, against whom judgments may be entered on account of negligent driving, to respond in damages to persons who may suffer as a result of such negligence, and consequently to help in reducing the appalling toll of human life and suffering resulting from the reckless operation of motor vehicles. Such statutes are remedial and are reasonable in purpose and effect, and should be liberally construed against the insurer to accomplish their purpose." 180 Md. at page 679, 26 A.2d at page 762.

■ 2. Under sec. 131(a) (6) (F), "the liability of the insurance carrier shall become absolute whenever loss or damage included in such policy occurs", and under sec. 131(d) "no policy of insurance offered as proof of financial responsibility * * * shall be cancelled, or annulled as respects any loss or damage, by any agreement between the person named in such policy and the insurance carrier after the said insured person has become involved in an accident resulting in such loss or damage and any such cancellation or annulment shall be void." These provisions should be considered in construing the "Newly Acquired Automobile" clause in the policy. As between the insurer and the persons injured by Stallings' negligence, they provide a reason in addition to those set out under "A 2", above, why the automatic coverage for the newly acquired automobile was not annulled by the failure of Stallings to give the notice called for by that clause.

### Conclusions

Inland is obligated to defend Stallings in the action brought against him by the infant Rodda, is obligated to pay his proportionate share of any judgment which may be rendered against him in that suit up to the limits of its policy, and is obligated to pay to Nationwide, as subrogee of Burton, one-half of the

judgment recovered against Burton and Stallings by Smack in the Circuit Court for Calvert County.

Counsel will prepare an appropriate judgment order; costs herein to be paid by Inland.