CARPENTER, APPELLANT, *v.* GASPER ET AL., APPELLEES.

(No. 2662—Decided January 18, 1962.)

*Messrs. Curtner, Brenton & Selva,* for appellant.
*Messrs. Altick & McDaniel,* for appellees.

CRAWFORD, P. J. Plaintiff, appellant herein, recovered a default judgment in the Common Pleas Court against the defendant-appellee Gasper, in the sum of $3,500 for personal injuries suffered in a collision between an automobile driven by plaintiff and a 1950 two-ton Chevrolet truck being operated by Gasper's agent.

Thereafter, plaintiff filed a supplemental petition against

the defendant-appellee Nationwide Mutual Insurance Company, alleging that the judgment was unpaid, that at the time of the injury on April 22, 1954, Gasper was insured by Nationwide against loss due to liability for bodily injury, and prayed for judgment against Nationwide in the amount of the original judgment.

Nationwide answered, admitting that it had in force and effect an insurance policy issued to Gasper on a 1948 Packard sedan automobile, denying that the policy covered the 1950 two-ton Chevrolet truck, and alleging that Gasper had not acquired ownership of the truck on the date of the injury, April 22, 1954.

The case was submitted to the court upon the following agreed statement of facts:

"1. Charles M. Gasper took possession of a 1950 Chevrolet 2-ton truck from Smith Used Car Sales on April 22, 1954, under an agreement to purchase same, prior to the time of the accident herein referred to.

"2. Said truck was involved in an accident which occurred April 22, 1954, as a result of which accident, plaintiff recovered a default judgment against Charles M. Gasper for $3,500 and $13.25 costs on account of bodily injuries sustained by her.

"3. Nationwide Mutual Insurance Company had issued its policy of insurance on a certain 1948 Packard automobile owned by Charles M. Gasper, with liability coverages thereon, a specimen copy of such policy being attached hereto and made a part of this agreed statement of fact.

"4. The only automobile or motor vehicle owned by or for which Charles M. Gasper held a certificate of title on April 22, 1954, was the 1948 Packard automobile described in the aforesaid policy of insurance.

"5. Charles M. Gasper was not the owner of the 1950 Chevrolet truck on April 22, 1954, the date said truck was involved in the accident with this plaintiff.

"6. The assignment on the back of the truck title from Smith Used Cars to Charles M. Gasper was executed on April 23, 1954.

"7. A power of attorney executed by Charles M. Gasper to Marcella D. Hamilton for the purpose of making application for a certificate of title for said truck on his behalf was executed on April 23, 1954.

"8. The certificate of title in Charles M. Gasper's name for the 1950 Chevrolet truck was issued on April 26, 1954.

"9. At the time of the accident, the 1950 Chevrolet truck was being operated in the business of Charles M. Gasper by his employee, who was acting within the scope of his employment.

"10. Charles M. Gasper notified the Nationwide Mutual Insurance Company agent of the accident occurring April 22, 1954, and that he had acquired possession of said 1950 Chevrolet truck, within thirty days from the time he so acquired possession of the truck from Smith Used Cars and that said truck was involved in the accident.

"11. Smith Used Car Sales had a garage liability policy with the Connecticut Indemnity Company covering automobiles owned by it and used in its business."

Pertinent provisions of the policy will be set forth in the appropriate portions of this opinion.

The Court of Common Pleas rendered judgment for the defendant-insurer, Nationwide. Plaintiff now appeals from that judgment on questions of law. The assignments of error are set forth in the form of "issues."

In construing the language of an insurance policy we must consider what a reasonable person in the position of the insured would have understood it to mean. When an insurance contract prepared by the insurer contains provisions subject to different constructions, one favorable to it and the other favorable to the insured, the latter construction will be adopted. See 6 Ohio Jurisprudence (2d), 247, Automobiles, Section 73. However, the contract made between the parties will be enforced, and a new contract will not be interpolated by construction. See 30 Ohio Jurisprudence (2d), 215 and 217, Insurance, Sections 205 and 206.

The first issue presented is the applicability of so-called "automatic insurance" provided by insuring agreement IV contained in the policy. So far as pertinent that agreement reads as follows:

"IV. Automobile defined, trailers, two or more automobiles, including automatic insurance

"(a) Automobile. Except where stated to the contrary, the word 'automobile' means:

"* * *

"(4) Newly acquired automobile—an automobile, owner-

ship of which is acquired by the named insured who is the owner of the described automobile, if the named insured notifies the company within thirty days following the date of its delivery to him, and if either it replaces an automobile described in this policy or the company insures all automobiles owned by the named insured at such delivery date; but the insurance with respect to the newly acquired automobile does not apply to any loss against which the named insured has other valid and collectible insurance. The named insured shall pay any additional premium required because of the application of the insurance to such newly acquired automobile * * *.''

It is not claimed that the 1950 two-ton Chevrolet truck replaced the 1948 Packard sedan automobile; but plaintiff argues that Nationwide insured ''all automobiles owned by the named insured at such delivery date'' of the Chevrolet truck on April 22, 1954.

It is well settled in Ohio that certificate of title determines ownership to motor vehicles. Section 4505.04, Revised Code; *Mielke* v. *Leeberson*, 150 Ohio St., 528; *Kelley Kar Co.* v. *Finkler*, 155 Ohio St., 541; *Garlick, Admr.,* v. *McFarland*, 159 Ohio St., 539; *In re Estate of Case*, 161 Ohio St., 288; *Brewer* v. *DeCant*, 167 Ohio St., 411.

The 1948 Packard sedan being the only automobile owned by Gasper on April 22, 1954, it follows that ''the company insures all automobiles owned by the named insured at such delivery date'' and that the automatic insurance is in that respect applicable to a newly acquired automobile. See *Horace Mann Mutual Casualty Co.* v. *Bell*, 134 F. Supp., 307, and other cases cited therein.

The question then arises whether Gasper gave adequate and proper notice to Nationwide. The generally accepted theory of the nature and purpose of automatic insurance is that it becomes effective immediately upon delivery of the newly acquired automobile and continues in effect for the specified time (thirty days here), at the end of which it expires unless the required notice is given and the insured has acquired ownership; that the notice is therefore a condition subsequent to coverage; that such automatic insurance is provided for the purposes of enabling the insured to have continuous coverage, to encourage him to continue with the same insurer, and to insure all his au-

tomobiles with it; and that the premium paid for the original insurance is the consideration for the automatic insurance until the end of the specified period. See annotations, 34 A. L. R. (2d), 936, 939 to 951.

Of what must the insured notify the company—of ownership or of delivery? The time provided for giving notice, like the effectiveness of the insurance, dates from delivery, not from the acquisition of ownership. If the insured gives notice within thirty days following delivery but before he acquires ownership by certificate of title, the notice can be of delivery only, yet it would be within the language of the policy. If there should be any uncertainty or ambiguity in the policy as to whether such notice would be effective, it must be resolved in favor of the insured.

Upon the third issue the appellee company argues that "the named insured has other valid and collectible insurance" so that according to insuring agreement IV (a) (4) "the insurance with respect to the newly acquired automobile does not apply." This is based upon paragraph 11 of the agreed statement of facts that:

"Smith Used Car Sales had a garage liability policy with the Connecticut Indemnity Company covering automobiles owned by it and used in its business."

The applicability and effect of garage liability policies, like others, depend upon the wording of the particular policy, compliance with its terms as to notice, etc., and all the circumstances surrounding each case. From the general statement just quoted we cannot leap to the positive conclusion that Gasper is thereby protected. Needless to say, if other existing insurance is void, it will not excuse the present insurer. 30 Ohio Jurisprudence (2d), 493, Insurance, Section 551.

But even if the insured is protected under the seller's garage liability policy, we do not believe that fact warrants the assertion that "*the named insured has* other valid and collectible insurance." (Emphasis added.) Insurance of different interests does not constitute other insurance. 30 Ohio Jurisprudence (2d), 492, Insurance, Section 549. Insurance obtained by a chattel mortgagee, unknown to the mortgagor, cannot be set up by mortgagor's insurer to avoid liability. 6 Ohio Jurisprudence (2d), 259, Automobiles, Section 81. In the case of *Horace Mann*

*Mutual Casualty Co.* v. *Bell, supra,* where the question was whether the insured owner of only one original automobile had all his automobiles insured with the same insurer, it was held that insurance in another company, obtained by the seller of the automobile newly acquired on an installment contract, the policy naming the purchaser as insured and a bank as its interest may appear, did not violate the insured owner's obligation to have all his automobiles insured with the plaintiff company. In that connection it was held, in effect, not to be other insurance which the insured had.

It is upon the second issue raised by plaintiff that we find the greatest obstacle to liability. The question is whether the use of the newly acquired 1950 two-ton Chevrolet truck is such as to bring it within the coverage of the policy. On the first page or face sheet of the policy, item 6 of the declarations reads:

"The automobile is used for pleasure and business unless otherwise specified by endorsement."

It is not otherwise specified. (There is a second and alternate sentence contained in item 6 relating to a farm passenger car, which was not designated as applicable, nor argued here.) Following the declarations is the statement:

"These declarations, as defined, with the insuring agreements, exclusions and conditions, form the policy identified by the policy number."

Insuring agreement V reads as follows:

"V Purposes of use defined.

"(a) The term 'pleasure and business' is defined as personal, pleasure, family and business use. (b) The term 'commercial' is defined as use principally in the business occupation of the named insured, including occasional use for personal, pleasure, family and other business purposes. (c) Use of the automobile for the purposes stated includes the loading and unloading thereof."

Insuring agreement IX reads:

"IX Policy period, territory,
            purposes of use.

"This policy applies only to accidents which occur and to direct and accidental losses to the automobile which are sustained during the policy period, while the automobile is within the United States of America, its territories or possessions, Can-

ada or Newfoundland, or is being transported between ports thereof, *and is owned, maintained and used for the purposes stated as applicable thereto in the declarations.*" (Emphasis added.)

We are unable to agree with plaintiff's contention that this latter provision applies only to insuring agreement VI, entitled "Use of Other Automobiles."

As the trial court stated:

"* * * it would be unreasonable to assume that the 1950 Chevrolet 2-ton truck was intended to be classified with the same purposes of use as a 1948 Packard passenger automobile. It is common knowledge and experience that the use of such a truck is principally in a commercial or business occupation * * *. A two-ton truck could not be classified for 'pleasure and business use,' as the 1948 Packard automobile, and would not be covered under section IV (a) (4) even if ownership had been acquired prior to the subject * * *."

The case of *Koehn* v. *Union Fire Ins. Co.*, 152 Neb., 254, 40 N. W. (2d), 874, sustains this proposition. While it is true in that case there is some additional language in the portion of the policy corresponding to our present insuring agreement IV (a) (4) which further supports the conclusion reached by that court, nevertheless, construing together the various provisions of the instant policy noted above, we are of the opinion that the same conclusion is inescapable here.

It is interesting to note that in the above-cited case of *Horace Mann Mutual Casualty Co.* v. *Bell*, the court found upon the evidence that a pickup truck was in fact used exactly as was a passenger automobile previously owned by the insured, but the court was careful to state that the facts presented showed such use. And there is a vast difference between the adaptability for pleasure and business use of a pickup truck and of a two-ton truck.

Both these last two cases cited are discussed in the annotation in 34 A. L. R. (2d), 936, 939 to 951, which, as well as a number of the cases therein discussed, support our conclusion.

In the present case, no facts are given as to the use actually made of the two-ton truck. At the time of the collision it was being operated by Gasper's agent; that circumstance may suggest a business use, but it does not prove it. The burden was up-

on the plaintiff to produce proof of facts bringing her claim within the provisions of the policy with respect to use for pleasure and business. This she has not done. The nature and size of the two-ton truck itself indicate its availability only for a use other than for "pleasure and business."

For this reason, the judgment will be, and hereby is, affirmed.

*Judgment affirmed.*

KERNS and SHERER, JJ., concur.