[Civ. No. 5614.   Fourth Dist.   Mar. 18, 1958.]

LEONARD WILLIAMS, Appellant, v. STANDARD ACCIDENT INSURANCE COMPANY, Respondent.

Vizzard, Baker & Sullivan and Jere N. Sullivan for Appellant.

H. T. Ellerby and Henry F. Walker for Respondent.

MUSSELL, J.—On May 5, 1952, plaintiff Leonard Williams was injured in an automobile accident involving a 1941 Chevrolet sedan owned and operated by one Alvin Weishaar. Williams brought a personal injury action against Weishaar and on January 21, 1954, recovered a judgment against him for $5,959.60 and costs. This judgment became final and when it was not paid, Williams instituted the instant action for damages against the defendant insurance company, claiming that an automobile liability insurance policy which it had issued to Weishaar covering his 1941 Dodge coupé also provided coverage of the said Chevrolet sedan at the time of the accident. Trial was had by the court without a jury and plaintiff appeals from the judgment entered for the defendant.

Weishaar applied to defendant insurance company for insurance on his 1941 Dodge coupé and upon receipt of the premium therefor, defendant company issued an insurance policy to him as the named insured, covering the period January 7, 1952, to January 7, 1953. The said Dodge coupé was the sole described automobile in the policy and the company agreed to pay on behalf of the insured "all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at the time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile." Appellant Williams claims that the evidence as a matter of law establishes that this protection is to be extended to coverage of the Chevrolet sedan which was owned by Weishaar and involved in the accident on May 5, 1952. Appellant's claim is based on the provisions in the insurance policy found under "Insuring Agreements," subdivision IV, and reading as follows:

"(a) AUTOMOBILE. Except where stated to the contrary, the word "automobile" means:

"(1) DESCRIBED AUTOMOBILE—the motor vehicle or trailer described in this policy: . . .

"(4) NEWLY ACQUIRED AUTOMOBILE—an automobile, ownership of which is acquired by the named insured who is the owner of the described automobile, if the named insured notifies the company within thirty days following the date of its delivery to him, and if either it replaces an automobile described in this policy or the company insures all automobiles owned by the named insured at such delivery date; but the insurance with respect to the newly acquired automobile does not apply to any loss against which the named insured has other valid and collectible insurance. The named insured shall pay any additional premium required because of the application of the insurance to such newly acquired automobile."

The record shows that on January 25, 1952, Weishaar purchased and paid for the Chevrolet sedan involved. The certificate of title given to him is dated January 28, 1952, and he testified that the car was delivered to him "anywhere within a couple of days to two weeks after January 25, 1952." Weishaar did not notify the defendant company within 30 days of this delivery to him, as required by the quoted portion of the insurance policy, and such notice was not given to the company until after the accident had occurred. On May 15, 1952, Weishaar applied to the Automobile Club of Southern California for and secured insurance on the Chevrolet sedan involved. He sold his Dodge car in November, 1952, and cancelled his insurance on it.

He testified that he owned a 1939 Oldsmobile and had owned it since 1951 and until after the date of the accident; that the Oldsmobile was not insured at the time of the accident; that while he did not know just how long it had been since it had been insured, the only car he recalled as being insured in the period January 7, 1952, to the date of the accident was the Dodge; that if he "had any on the Oldsmobile, he did not recall it." He further testified that when he purchased the Chevrolet on January 25, 1952, there were no wheels or tires on it, "didn't have any windshields, the windshields were broke, the headlight was gone, upholstery was tore up, it needed two new fenders, needed a bumper"; that it needed a radiator and a grill; that about two weeks after the Chevrolet was delivered to him, he started rebuilding it and did not drive it until about the 3d of May, 1952.

The replacement provision of the policy is not here involved

and appellant's claim that the Chevrolet sedan was insured by the policy at the time of the accident is based on the premise that the company insured all of Weishaar's automobiles owned by him at the delivery dates thereof. If it be assumed that the policy automatically insured Weishaar's Chevrolet as well as his Dodge, such automatic insurance continued and was in force for 30 days after the delivery of the Chevrolet and no longer, unless the insurance company was notified of such delivery within said 30-day period. The requirement of notice is a condition subsequent which must be complied with in order to keep such coverage in effect beyond that period. (*Birch* v. *Harbor Ins. Co.,* 126 Cal.App.2d 714, 719 [272 P.2d 784] ; *Everly* v. *Creech,* 139 Cal.App.2d 651, 657 [294 P.2d 109].)

▉ Appellant argues that the Chevrolet was not an automobile when it was delivered to Weishaar and did not become such until two days before the accident, and that the notice given to the company on the day following the accident was a compliance with the requirements of notice in the policy. The court found that the Chevrolet was not insured; that it was acquired by Weishaar and delivered to him more than 30 days prior to May 5, 1952. These findings are supported by substantial evidence.

Appellant argues that as a matter of law the Chevrolet sedan was not an automobile until it was put in operating condition, about two days before the accident. This argument is based on the assumption that the trial court was required to believe the testimony of Weishaar as to the condition of the Chevrolet when it was delivered to him. ▉ However, the credibility of the witness Weishaar and the weight to be accorded to his testimony were questions directed to the trial judge who, under proper circumstances may accept all or such part of the testimony of any witness as he believes to be true, or may reject all or any part he believes to be untrue (*Bechtold* v. *Bishop & Co., Inc.,* 16 Cal.2d 285, 291 [105 P.2d 984]), and the trier of fact may reject the uncontradicted testimony of a witness provided he does not act arbitrarily. (*Hill* v. *Thomas,* 135 Cal.App.2d 672, 681 [288 P.2d 157].) ▉ Furthermore, all reasonable inferences must be indulged to uphold the judgment of the trial court if possible. (*Memorial Hosp. Assn.* v. *Pacific Grape etc. Co.,* 45 Cal.2d 634, 635 [290 P.2d 481, 50 A.L.R.2d 442].)

While Weishaar testified that when the Chevrolet was delivered to him there were no wheels or tires on it, he did not

state when wheels or tires were put on or when the car could have been operated. He purchased it as an automobile and secured a certificate of title thereto and possession thereof, as such, several months prior to the accident and immediately started to repair it.

In Webster's International Dictionary, second edition, an automobile is defined as a self-propelled vehicle suitable for use on a street or roadway, and in Words and Phrases, permanent edition, 4, it is said that "Automobile is general name adopted by popular approval of all forms of self-propelling vehicles for use on highways and streets, and is presumed to have been used in indemnity provision of accident policy in its common, general, and popular sense, in absence of proof to the contrary. *Life & Cas. Ins. Co. of Tennessee* v. *Metcalf,* 240 Ky. 628 [42 S.W.2d 909, 910]."

Obviously, the Chevrolet involved was an automobile and was registered and operated as such, and the fact it was not in use on the highways and streets while being repaired did not change it into something else. The insurance policy herein requires the insured to notify the company within 30 days after *delivery to him* of an automobile in order to extend the coverage on it beyond the 30-day period. This provision is plain and unambiguous and cannot be interpreted as a provision that notification to the company is to be given within 30 days after completing repairs on an automobile or after making it operable. The policy herein obligates the company to pay on behalf of the insured all sums which the insured shall be legally obligated to pay as damages . . . arising out of the ownership, maintenance or use of the automobile. This coverage is not limited to liability arising out of use and maintenance of an automobile on the highway or while it is being operated. The meaning of maintenance encompasses repairs and an automobile obviously can be repaired and maintained irrespective of whether it is operable or not. The Chevrolet automobile here involved was not a replacement under the terms of the policy and it was not described or referred to therein. If insured under the automatic insurance provision of the policy, such insurance was only for 30 days following the delivery of the car to Weishaar, and since he did not notify the company of such delivery to him within said 30 days, it follows that the car was not insured by the company at the time of the accident.

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.