[Civ. No. 259. Fifth Dist. Nov. 21, 1963.]

CIVIL SERVICE EMPLOYEES INSURANCE COMPANY, Plaintiff and Appellant, v. RICHARD WILSON et al., Defendants and Respondents.

Harold A. Parichan, Kirtland & Packard and Robert L. Wilson for Plaintiff and Appellant.

William C. Hahesy, McCormick, Barstow, Sheppard, Coyle & Best, Lawrence E. Wayte, Thomas, Snell, Jamison, Russell, Williamson & Asperger and James E. La Follette for Defendants and Respondents.

CONLEY, P. J.—The plaintiff, Civil Service Employees Insurance Company, appeals from an adverse judgment in a declaratory relief suit brought to determine whether there is coverage under two automobile insurance policies issued to Richard Wilson and Frances M. Wilson of a newly acquired Ford automobile which collided with another car and gave rise to pending damage suits brought by the owners and occupants of the other automobile; the plaintiffs in the damage suits and their insurance carrier, American Star Insurance Company, were also joined as parties defendant. The trial court held that the two insurance policies issued to the Wilsons did in fact cover the newly acquired 1956 Ford automobile purchased by them and driven at the time of the collision by Theron Wilson, son of Frances M. Wilson and stepson of Richard Wilson.

Appellant issued its automobile policy No. 98375 to Richard L. and Frances M. Wilson, husband and wife, in 1957, describing a 1956 Mercury, and containing the usual bodily injury and property damage liability clauses and omnibus coverage of permissive users; that policy was renewed and in effect on the date of the accident. A second policy, No. 126083, was issued by plaintiff to Mr. and Mrs. Wilson in 1958, describing a Studebaker car and containing the same coverages; the vehicle described therein was later changed to a Plymouth and then to a pickup truck; this policy was also renewed and in effect at the time of the accident. These policies obligated the insurer to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, ... sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile"; property damage liability insurance was expressed in similar language; a typical omnibus clause defined the "insured" to include permissive users of the automobile.

The policies provided for automatic coverage of newly acquired automobiles and defined "automobiles" as follows:

"Newly acquired automobile—an automobile, ownership of which is acquired by the named insured who is the owner of the described automobile, if the named insured notifies the company within thirty days following the date of its delivery to him, and if either it replaces an automobile described in this policy *or the company insures all automobiles owned by the named insured at such delivery date*; but the insurance with respect to the newly acquired automobile does not apply to any loss against which the named insured has other valid and collectible insurance. The named insured shall pay any additional premium required because of the application of the insurance to such newly acquired automobile." (Italics added.)

The first alternative (replacement of an insured automobile) is not here involved. The Wilsons claim that they were covered under the second alternative.

As of July 1960 the only vehicles owned by Mr. and Mrs. Wilson jointly were the Mercury and the pickup truck. On Saturday, July 30, 1960, the Wilsons purchased a third vehicle, a 1956 Ford, from an automobile dealer in Pixley. Mr. and Mrs. Richard Wilson lived in Tipton and Theron Wilson in Tulare; he was then 18 years of age and married; he was driving the newly acquired Ford by permission of his par-

ents on Monday, August 1, 1960, when the accident occurred.

Appellant insurer claims that coverage of the newly acquired Ford was inapplicable to Mrs. Wilson, because she had inherited a 1946 Chevrolet from her mother's estate in May 1960, and such automobile was never insured by plaintiff.

The trial court found that the old Chevrolet was not an automobile within the meaning of the policy, and that in any event it was not owned by Mrs. Wilson at the time the new Ford was acquired. As a witness, Theron Wilson described the old car as "... a total mess. People had come and taken the dashboard out, the seats, the starter, the generator, everything." Other evidence was that the tires were torn; none of the Wilsons had ever driven it, or even seen it being driven; it was located at the time of the distribution of the estate at a campsite in Tipton until a wrecker from the Swanson-Fahrney Agency in Pixley towed it away with the front end raised off the road. Before her death, it had been registered in the name of Marie J. Shoenhair, and no registration was ever effected in the name of Mrs. Wilson; it was not licensed for 1960; there was no insurance of any kind on it; it was listed as of "no value" in the inventory and appraisement of Mrs. Shoenhair's estate. No one ever attempted or apparently intended to repair, license, or operate the old Chevrolet; it was not moved or driven until after it had been taken as a trade-in allowance on the Ford by the automobile dealer on July 30, 1960. It could only be moved by towing, and the automobile dealer had it towed away.

Respondents argue that no one would think that such "junk" should have been insured or that the terms of the policies would be applicable to it; and all interest which Mrs. Wilson may have had in the 1946 Chevrolet was relinquished on July 30, 1960, when it was traded in on the new Ford with a $50 allowance on the purchase price. Accordingly, say respondents, the plaintiff did insure "all automobiles owned by 'Mrs. Wilson' at such delivery date," that is, when the Ford was delivered.

Appellant also claims that it was relieved of its obligations under the policies by reason of one of the "recitals" on the "Declarations" page of the policies. In part 4 of the "Declarations" in each of the policies various blanks were filled in describing the vehicle therein specifically insured. Thus, the policy covering the Mercury (Exhibit 4) lists the

trade name of the car, the model, the body style, motor number, model year, the amount paid for the Mercury, and it contains the following provision: "3—no person under 25 years of age will regularly operate the automobile, except as herein stated: NO EXCEPTIONS."

Appellant argues that the "no regular driver under 25" provision was broken on Saturday, July 30, 1960, when the Ford was purchased, on the theory that Theron Wilson, a person under 25 years of age, then became the regular driver of the Ford.

The trial court specifically found against both of these contentions of plaintiff:

"5. It is true that at the time of delivery of said 1956 Ford Fairlane automobile to said defendants, the only other automobiles owned by said defendants were the 1960 Ford pickup and the 1956 Mercury, both of which were insured by plaintiff under the policies above mentioned.

"6. It is true that the 1956 Ford Fairlane automobile was a newly acquired automobile within the provisions of each of the above mentioned policies."

In its memorandum decision, the trial court stated that "... the automobile that Mrs. Wilson inherited was not owned by her at the time of the delivery of the Ford as the same had been traded in on the Ford;" and further, that the requirement that the plaintiff insure "all of the assureds' automobiles" in order to make effective coverage for a newly acquired automobile "... can only be interpreted to apply to automobiles requiring insurance," and no such insurance was required for the Chevrolet inherited by Mrs. Wilson.

The respondents maintain that this old "junker" was not a motor vehicle within the meaning of the clause in the policy setting up the prerequisites for the application of insurance to a newly acquired automobile. Section 415 of the Vehicle Code contains the following definition: "A 'motor vehicle' is a vehicle which is self-propelled." Of course, it could not reasonably be maintained that if one were to remove a battery or some incidental operating part from a car, it would cease to be an automobile. Good sense presupposes that a vehicle designed for self-propulsion on land and which may be so self-propelled or restored to that condition with reasonable cost and effort may be considered an automobile. There was no evidence in the record that the Chevrolet would or could be so restored, and the trial court's finding

has ample support in the record. Not only was it incapable of self-propulsion, but there was no reasonable possibility of restoring it to that condition.

Appellant cites *Williams* v. *Standard Acc. Ins. Co.*, 158 Cal.App.2d 506, 510 [322 P.2d 1026], wherein a newly acquired automobile clause was interpreted; the appellant argued that the Chevrolet in that case was not an automobile when delivered, because there were no wheels, tires, or windshield on it, and it was otherwise in disrepair; appellant quotes the court's statement in the opinion that ''the Chevrolet involved was an automobile and was registered and operated as such, and the fact it was not in use on the highways and streets while being repaired did not change it into something else.'' However, the *Williams* case involved the issue of when the 30-day notice period started to run, and held that the trial court's finding that it began upon delivery was justified; the insured started to rebuild the car upon acquisition and began driving it when the repairs were completed. In the instant case there was no attempt to restore the Chevrolet; the car was not used as an automobile, and it was not currently registered or operated as such. The court, in the *Williams* case, also said (pp. 509-510):

''Furthermore, all reasonable inferences must be indulged to uphold the judgment of the trial court if possible. [Citations.]

''While Weishaar testified that when the Chevrolet was delivered to him there were no wheels or tires on it, he did not state when wheels or tires were put on or when the car could have been operated. He purchased it as an automobile and secured a certificate of title thereto and possession thereof, as such, several months prior to the accident and immediately started to repair it.''

▮ Transfer of title may be effective as between the parties even when compliance with the Vehicle Code requirements as to registration is absent. (*Stoddart* v. *Peirce*, 53 Cal.2d 105, 116-117 [346 P.2d 774]; *Venne* v. *Standard Acc. Ins. Co.*, 171 Cal.App.2d 242, 246 [340 P.2d 30]; 51 Cal.L. Rev., 799, 803.) The effect of noncompliance is that the seller may be subject to vicarious liability as to any accident which results from negligent operation of the vehicle on the highway in the meantime.

In *Mullen* v. *Farm Bureau of LaSalle County*, 21 Ill.App. 2d 280 [157 N.E.2d 679, 684], rejecting a contention of the insurer similar to that urged here by appellant, it is said:

''The transactions having been completed and consum-

mated at the Sutton Motors the new automobile was then the property of the plaintiff. The old Plymouth, sitting in plaintiff's garage at his home, was then owned by Sutton Motors, who only had yet to go to Ransom and take possession of it.''

That a transfer registration is not necessary to give rise to the automatic coverage where a replacement automobile is involved was expressly held in an opinion written by Schauer, J., in *Dean* v. *Niagara Fire Ins. Co.,* 24 Cal.App.2d Supp. 762, 764-766 [68 P.2d 1021], and the same result was reached in *Inland Mut. Ins. Co.* v. *Stallings,* 263 F.2d 852, where an additional car was acquired.

The trial court's determination that there was no breach of the insurance contract by the Wilsons with respect to Theron C. Wilson's driving the car is amply supported by the record. Nothing contained in part 4 on the declarations pages of the policies is reasonably applicable to the automatic coverage provisions for newly. acquired automobiles; the heading of part 4 reads ''Insured's Automobile Description and Purchase Facts,'' and such description and purchase facts are obviously inapplicable to a later newly acquired automobile. Neither the trade name ''Mercury,'' nor the model ''Medalist,'' nor the body style two-door sedan, nor the motor number, nor the model year, nor the amount paid is applicable to a new vehicle later obtained after issuance of the policy. Similarly, the recital that, ''No person under 25 years of age will regularly operate the automobile,'' necessarily refers to the vehicle specifically described, and it does not by its terms have reference to a car not then owned by the insured. Other recitals in the declarations clearly relate to circumstances existing at the time of the issuance of the policy or to the particular vehicle specifically described therein.

It has been held that a recital relative to drivers under 25 years of age is not a promissory warranty or a representation of future conduct, even as to the vehicle described in the policy. In *Fazzino* v. *Insurance Co. of North America,* 152 Cal.App.2d 304, 309 [313 P.2d 178], the court said:

''The policy states that the reference '1B' in the description of the named automobile means among other things that there is no operator of the automobile under 25 years of age resident in the named insured's household. At the time of the issuance of the policy plaintiffs had no such person in

their household. The fact that their son thereafter became of an age to permit him to operate an automobile would and did in nowise affect the terms of the policy. This was a mere recital and none of the terms of the policy were contingent upon the statement continuing to be true.''

It was similarly held in *Republic Indemnity Co.* v. *Martin,* 222 F.2d 438, 441, that:

''We do not believe that the parties ever intended that changing the place where the car was to be principally garaged alone and without more would vitiate the policy.''

▮▮▮ Respondents reasonably point out that the circumstances that an additional premium might well be required if the new car is to be regularly driven by an underage person does not establish either a warranty or a breach thereof in respect to the automatic 30-day coverage, that the provision for automatic insurance on newly acquired vehicles necessarily involves a change in the risk in any event, as to all coverages including comprehensive and collision as well as liability coverage, and it is for this reason that the policy provides that the named insured shall pay any additional premium required by reason of the acquisition of the new car. The old premium rates do not apply to the new automobile, and a new premium will be calculated according to model and value of the car, and its proposed use.

In *Merchants Mut. Cas. Co.* v. *Lambert,* 90 N.H. 507 [11 A.2d 361, 363, 127 A.L.R. 483] the court said:

''It is difficult to see how any question in regard to the payment of an additional premium could arise until the required notice had been given to the company and we therefore conclude that until that time and until a demand for an additional premium had been made, the insurance would be in force upon the replacing car.''

The insured may have free automatic insurance during the 30-day period and then purchase insurance on the new vehicle from another company. (*Horace Mann Mut. Cas. Co.* v. *Bell,* 134 F.Supp. 307, 312.) One cannot apply the recitals in the declarations to a newly acquired automobile, and this becomes apparent in respect to the matter of premium; for example, if the cost of a new car should be $4,000, the premium for collision coverage based upon the originally described car valued at $2,500 is inappropriate; the policy plainly contemplates that, if and when the insured gives notice of the acquisition, the entire premium structure must be adjusted both because a new car is added and because of probable differences in value, usage, and the like.

Whether or not a vehicle has been subject to a regular or frequent use excluded by the policy is a question of fact dependent upon the particular circumstances of the case. (*Comunale* v. *Traders & General Ins. Co.,* 116 Cal.App.2d 198, 201 [253 P.2d 495, 68 A.L.R.2d 883]; *Pacific Auto Ins. Co.* v. *Lewis,* 56 Cal.App.2d 597, 601 [132 P.2d 846]; *Johnson* v. *Fidelity & Cas. Co. of New York,* 238 F.2d 322, 326.) The mere fact that Theron Wilson used the car from Saturday, July 30, until Monday, August 1, does not necessarily establish that he was to operate the automobile regularly. Even a use "to and from work" for 10 successive days leading up to an accident, has been held not to be a "frequent use." (*Comunale* v. *Traders & General Ins. Co., supra.*) The word "regular" is even more restrictive.

"But 'regular use' reasonably suggests a principal use, as distinguished from a casual or incidental use. [Citation.]" (*Pacific Auto Ins. Co.* v. *Lewis, supra,* 56 Cal.App.2d 597, 600.)

It has been held that a car was not furnished for regular use by a father to his son when it was used by the son from once to three times a week where there was no "standing arrangement" with the father for the use of the car. (*Juzefski* v. *Western Cas. & Surety Co.,* 173 Cal.App.2d 118, 122 [342 P.2d 928].)

The Ford was delivered only two days before the accident, and there was no basis for reaching a conclusion as a matter of law as to any definite or regular pattern of use, understanding or agreement. The parties' testimony as to their intentions was at least susceptible of varying interpretation presenting a factual question. The testimony was that the car was intended, "to be used for the whole family" and that it was to be used "part-time" by Mrs. Wilson, and also by Mr. Wilson, "and also, if needed, by Theron." The evidence in the record does not compel the conclusion as a matter of law, that Theron Wilson was to be the principal or regular driver of the Ford or that there was any definite or standing arrangement for his use of the car.

It appears to us that the trial court's decision under the applicable law and the facts as found should be upheld.

The judgment is affirmed.

Brown (R.M.) J., and Stone, J., concurred.