157 N.J. Super. 341 (1978)
384 A.2d 1113
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
RICHARD DE MARCO AND JOSEPH GRZES, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted March 7, 1978.
Decided March 29, 1978.
*344 Before Judges LORA, SEIDMAN and MILMED.
Mr. James T. O'Halloran, Prosecutor of Hudson County, attorney for appellant (Mr. James M. Mc Govern, Assistant Prosecutor, on the brief).
Messrs. Mc Donough, Murray & Korn, attorneys for respondents (Mr. Peter L. Korn on the brief).
PER CURIAM.
Defendants were indicted for bringing stolen property into the State (N.J.S.A. 2A:119-9), receiving a stolen vehicle (N.J.S.A. 2A:139-3), and possession of motor vehicles with altered serial numbers (N.J.S.A. 2A:127-3). They moved before trial to suppress evidence seized in a warrantless search. Following a hearing the trial judge ordered the suppression of the evidence, consisting of two "vehicles" which are the subject of the indictment. We granted the State's motion for leave to appeal.
The testimony at the suppression hearing revealed that on May 7, 1976 a Kearney police officer on foot patrol, who had received information from an informant concerning two vehicles at an automobile body shop located on his beat, owned by defendant De Marco, confirmed by observation that there were two Chevrolet Blazers in the shop, one black and the other gold. He informed the detective bureau "that I had received word that they were stolen vehicles and were in the process of having the numbers changed on them." Later that day two Kearney detectives, accompanied by two inspectors from the Division of Motor Vehicles, went to the shop. The inspectors requested DeMarco to produce "the ownership *345 papers" for the vehicles in question. When DeMarco failed to do so they impounded the vehicles and had them towed away for investigation by the State Police Auto Squad.
The basis for the trial judge's determination to suppress the evidence was that
* * * There were no emergent circumstances here, this was not a search incidental to an arrest. There was not consent in this particular case and as I said there were none of the exceptions which would give the right to the police to search the vehicle, enter the private business premises of the defendant and search the vehicle. There was ample time to apply for a search warrant * * *.
The trial judge further held that the Motor Vehicle Act could not "give license to the police to enter upon a person's business property, commence a search of a motor vehicle to determine whether or not that motor vehicle is one that has been previously stolen or for any other reasons." Apart from this, he found that the gold Blazer was not in operable condition and for that reason was not a motor vehicle as defined in the Motor Vehicle Act, N.J.S.A. 39:1-1. He made no finding with respect to the operability of the black Blazer.
The State contends that the trial court erred in (1) deciding that the two Chevrolet Blazers were not motor vehicles, and (2) finding that N.J.S.A. 39:10-6 does not apply to private property.
N.J.S.A. 39:10-6, to the extent pertinent here, requires every person to have in his possession in this State for each motor vehicle a certificate of ownership therefor and the registration certificate, and to produce either the certificate of ownership or the registration certificate upon demand by the commissioner or a motor vehicle inspector. If none is produced, the Commissioner of Motor Vehicles or motor vehicle inspector "may seize and take possession of the motor vehicle and hold and dispose of it in accordance with Section 39:10-21 of this Title." It is further provided that when a motor vehicle is in the possession of a garage keeper, motor vehicle dealer or service station, the production of a writing signed *346 by the person delivering possession of the vehicle, stating that he is the owner or entitled to the possession of the motor vehicle and has the requisite proof of ownership shall be deemed a compliance with the section.
Were it not for the involvement of N.J.S.A. 39: 10-6, there could be no doubt that the seizure of the two "vehicles" without a warrant would have been clearly unreasonable and illegal. The record does not indicate that the information which led to the entry into the body shop came from a reliable informant. Moreover, even after the detectives and inspectors entered the shop, they did not have probable cause to believe that a crime was being committed, at least not until the owner failed to produce proof of ownership. It has not been demonstrated that exigent circumstances existed which justified dispensing with a search warrant.
The State does not seriously challenge the foregoing. Its thesis is that the inspectors who accompanied the detectives were empowered under N.J.S.A. 39:10-6 to seize and take possession of the "vehicles" after the body shop owner was unable upon demand to produce the requisite proof of ownership. They do not concede that the two Blazers were inoperable.
The scheme of motor vehicle certificates is directed to prevent the transfer of stolen vehicles. Kutner Buick v. Strelecki, 111 N.J. Super. 89, 100 (Ch. Div. 1970). All motor vehicles as defined in the Motor Vehicle Act are subject to the requirements of N.J.S.A. 39:10-6, whether on public highways or private property. See Safeguard Insurance Co. v. Herold, 138 N.J. Super. 516, 520 (Cty. Ct. 1975). The necessity thereunder for the owner to have in his possession the certificate of ownership and registration certificate or other proper proof of ownership does not extend only to the actual operation of the motor vehicle on the public highways. In our view, the seizure and disposition provisions of this section are available, subject to the constitutional *347 rights of the owner or possessor, regardless of where the vehicle may be located in this State. It is to be noted in this regard that another seizure and sale statute, N.J.S.A. 39:5-47, provides that the Commissioner may authorize the seizure of a motor vehicle operated over the highways of this State "when he has reason to believe that the motor vehicle has been stolen or is otherwise being operated under suspicious circumstances and may retain it in the name of the department until such time as the identity of ownership is established * * *," and to sell the same at public sale after 90 days if such proof is not forthcoming. We perceive no merit in respondent's argument that N.J.S.A. 39:10-6, insofar as it authorizes the seizure of a motor vehicle "possessed on private property without probable cause, and without a warrant, is unconstitutional on its face." It does not do that. Fourth Amendment safeguards against unreasonable searches and seizures may not be disregarded.
But a private business whose doors are open to the general public is also to be considered open to entry by the police or other law enforcement officers for any proper purpose not violative of the owner's constitutional rights; e.g., patronizing the place or surveying it to promote law and order or to suppress a breach of the peace. State v. La Duca, 89 N.J. Super. 159, 165 (App. Div. 1965). We have no difficulty in reaching the conclusion that the detectives and inspectors could lawfully enter the premises in question and make inquiry concerning the Blazers. We are also satisfied that the motor vehicle inspectors properly seized the Blazers and impounded them, provided that they were motor vehicles within the intendment of the statute. It is uncontroverted that DeMarco was unable to produce proof of ownership as required by N.J.S.A. 39:10-6. His explanation that he had bought the Blazers in another state for salvage and his offer to show the inspectors a receipt and cancelled check were not sufficient.
Thus, the key issue is whether the Blazers were motor vehicles under the statute, requiring a certificate of ownership *348 or registration certificate. As defined in N.J.S.A. 39:1-1, the term "motor vehicle" includes all vehicles propelled otherwise than by muscular power, except such vehicles as run upon rails or tracks. The State argues that the definition should be construed to mean any device by which a person may be transported upon a highway, excepting those propelled by muscular power or used only upon rails or tracks, and that a vehicle does not cease to be a vehicle because it is temporarily inoperable. It cites in support In re Ferro Contracting Co., 380 F.2d 116 (3 Cir.1967), and Arellano v. Moreno, 33 Cal. App.3d 877, 883, 109 Cal. Rpt. 421 (D. Ct. App. 1973).
We discern no inconsistency between those decisions and our Motor Vehicle Act, since the term "vehicle" is defined in the latter as "every device in, upon or by which a person or property is or may be transported upon a highway, excepting devices moved by human power or used exclusively upon stationary rails or tracks or motorized bicycles." N.J.S.A. 39:1-1, emphasis supplied. We agree that a vehicle does not lose its character as such merely because it is temporarily inoperable.
It is not denied that the gold Blazer was an inoperable shell of a car. At the time it was seized it clearly could not be used to transport anything, and the record does not establish that it was in the process of being repaired or that there was any intent to repair it. The trial judge thus correctly concluded that it did not constitute a motor vehicle to which N.J.S.A. 39:10-6 applied. Consequently, the motor vehicle inspectors were not justified in seizing the gold Blazer in the circumstances here present.
Although the trial judge's suppression of evidence of the black Blazer did not turn on its operability or lack thereof, we are of the view that it was still a motor vehicle despite its state of partial disassembly at the time it was seized, since it is clear from De Marco's testimony that he was in the process of making it operable. The owner of the auto shop not being able to produce proof of ownership *349 in compliance with N.J.S.A. 39:10-6, the seizure of the black Blazer by the inspectors was proper and, in the circumstances here present, did not offend defendants' Fourth Amendment rights.
The order suppressing evidence is affirmed insofar as it relates to the gold Chevrolet Blazer and is reversed insofar as it relates to the black Chevrolet Blazer.