[No. B012895. Second Dist., Div. Five. Feb. 5, 1986.]

JOSEPHINE VELDERRAIN, Defendant and Appellant, v.
PROGRESSIVE CASUALTY INSURANCE COMPANY,
Plaintiff and Respondent.

### COUNSEL

Dunne, Scolinos, Falvey & McCullough and Harry Frank Scolinos for Defendant and Appellant.

Wise & Nelson, Duane H. Timmons and Stephen M. Smith for Plaintiff and Respondent.

### OPINION

**WEISZ, J.**\*—Respondent insurance company, Progressive Casualty, filed an action for declaratory relief against its insured, Robert Hubbard, doing business as Hillside Towing Service, naming as codefendants appellant Josephine Velderrain and her former husband, Ramon Fierro. The codefendants Velderrain and Fierro had each brought wrongful death actions, where the principal defendant was one Gary Powell, the driver of a car in which the son of Velderrain and Fierro was riding as a passenger, joining Hubbard as a defendant. Powell had bought a 1967 Pontiac Firebird from Hubbard on the day of the accident, August 12, 1981, and had crashed into a wall, killing young Fierro.

---

\*Assigned by the Chairperson of the Judicial Council.

Progressive Casualty, after securing a plenary set of admissions from Hubbard, took his deposition and moved for summary judgment. Velderrain was the only party to oppose that motion, and did so by securing certain changes to the Hubbard deposition which, she contends, create a factual issue for trial. The court below granted the motion and entered the judgment from which this appeal is taken. Holding that action proper, we affirm.

### APPELLANT'S CONTENTIONS

Insofar as the background facts are necessary, they can be summarized in the following fashion.

Hubbard, prior to insuring with Progressive Casualty, inquired as to the cost of coverage for his tow truck alone and also for a "package" that would cover the tow truck used in the business and also the family automobile. Having found the price of the latter prohibitive, he opted for the policy here involved, which describes the tow truck and has a special endorsement restricting coverage to use of that tow truck within 100 miles. The policy period ended on August 22, 1981.

On August 1, 1981, Hubbard purchased the 1967 Pontiac for $200. By August 5, he had agreed to sell the car to Powell for $700 and had received $500 of the money, but would not deliver possession until all of the money had been paid. On August 12, Powell brought in the unpaid portion of the price and drove the car off. At some time later in that day, the collision took place. Powell had taken possession of the title documents, and apparently the pink slip had been endorsed by the prior owner, with Powell later named as the transferee. The parties agree that title had passed.

In his original deposition testimony, Hubbard had stated that he owned another automobile on the day in question, a 1977 Pontiac Bonneville, and that both the Firebird and the Bonneville were used in the family as personal cars. When the deposition was sent him for signature, he changed his testimony, indicating that the Bonneville had been sold prior to acquiring the Firebird.

The contention that the 1967 Pontiac Firebird was the only other vehicle owned, prompts appellant's claims that the policy provides coverage to Hubbard and, eventually, to appellant should her suit be successful. It arises in the following fashion. Although the policy insures only the tow truck, the provisions therein are relatively standard ones utilized for non-commercial family vehicles. It has the normal family policy definition of an owned automobile (Cal. Automobile Insurance Law Guide (Cont.Ed.Bar 1973) § 4.1, pp. 55-56), reading as follows: ". . . 'owned automobile'

means . . . (c) a private passenger . . . automobile ownership . . . of which is acquired by the named assured during the policy period, provided . . . the company insures all private passenger automobiles, farm automobiles and utility automobiles owned by the named insured on the date of such acquisition and the named insured notifies the company within 30 days following such date.''

In effect, appellant's contention reduces to a simple one: that since Hubbard had no private automobile on the date of acquisition of the Firebird, August 1, that the policy covering the commercial vehicle gave Hubbard at least 30 days of free insurance on that car as a family automobile.

### ACQUIRED AUTOMOBILE COVERAGE

The provision here involved is known as a "blanket" or "fleet" provision, in the "automatic insurance" clause of the policy. (12 Couch on Insurance (rev. 2d ed. 1981) §§ 45:215, 45:216.) The effect is to extend coverage to newly acquired vehicles, and appears to be extremely common today, although it was at one time considered rather novel (see *Koehn* v. *Union Fire Ins. Co.* (1950) 152 Neb. 254 [40 N.W.2d 874, 880]).

The first California case involving a provision of this kind is *Birch* v. *Harbor Insurance Co.* (1954) 126 Cal.App.2d 714 [272 P.2d 784]. In that case it was held that the effect of the provision was to provide automatic coverage during the notice period where an additional automobile was acquired by the insured during the policy period. That principle is very firmly settled now, in a line of cases which have explored the effect of ownership of an inoperable vehicle, or repair of a previously inoperable vehicle (*Civil Service Emp. Ins. Co.* v. *Wilson* (1963) 222 Cal.App.2d 519, 523 [35 Cal.Rptr. 304]; *Cal. State Auto. Assn. Inter-Ins. Bureau* v. *Dearing* (1968) 259 Cal.App.2d 717, 725 [66 Cal.Rptr. 852]), and indicate that the additional free coverage is justified by the likelihood that the insured will purchase insurance on the additional or newly acquired automobile from the present insurer rather than another insurance company. (*State Farm Mut. Auto. Ins. Co.* v. *Price* (1966) 242 Cal.App.2d 619, 624 [51 Cal.Rptr. 554].)

In every case decided in this state, the newly acquired automobile was acquired in addition to an automobile already insured.

By its own terms, the provision here at issue becomes operable only if Progressive Casualty insures "all private passenger automobiles, farm automobiles, and utility automobiles" owned by Hubbard. As a commercial vehicle, the tow truck is excluded. The issue thus is, whether coverage is

afforded where there is no automobile owned by the insured prior to the acquisition of the automobile that is newly acquired.

The case directly in point is *Reserve Insurance Company* v. *Dearhart* (1964) 219 Ga. 699 [135 S.E.2d 378]. The insured was a person named Rauschenberg, who took out the policy at a time when he drove only a car, described in the policy, owned by his father. Thereafter, he acquired another car, which was soon involved in a collision with one Dearhart. When Dearhart brought suit against Rauschenberg, his insurer brought an action for a declaration of rights as to coverage. The trial court held that no coverage was afforded; the intermediate appellate court reversed, and, on certiorari to the Supreme Court of Georgia, it was held that the provision being clear and unambiguous, it required that the insured have already owned one or more automobiles prior to acquisition of a "new" automobile in order that coverage might attach. As that court stated the proposition, the insurance company could not possibly have insured all automobiles owned by Rauschenberg on the date of acquisition of the newly acquired car, if he owned none at all.

This follows the earliest, and perhaps best, statement of the rule which is found in *Dunmire Motor Co.* v. *Oregon Mutual Fire Ins. Co.* (1941) 166 Ore. 690 [114 P.2d 1005, 1008]: "It is our opinion that, taking the automatic coverage provision in its entirety, it was intended to apply to any other automobile acquired by the assured who owned one or more automobiles, provided that all of the automobiles, whether one or more, then owned by him were insured by [the same insurance company]." The "one or more" concept is found in a large number of cases dealing with this provision (*Birch* v. *Harbor Insurance Co.* (1954) 126 Cal.App.2d 714, 719-720 [272 P.2d 784]; *Civil Service Emp. Ins. Co.* v. *Wilson* (1963) 222 Cal.App.2d 519, 526 [35 Cal.Rptr. 304]; *Dixie Auto Ins. Co.* v. *Goudy* (1964) 238 Ark. 432 [382 S.W.2d 380, 381-382]; *Horace Mann Mutual Casualty Company* v. *Bell* (D.Ark. 1955) 134 F.Supp. 307, 311; *Inland Mutual Insurance Company* v. *Stallings* (4th Cir. 1959) 263 F.2d 852, 855; *Carpenter* v. *Gasper* (1962) 116 Ohio App. 45 [21 Ohio Ops.2d 264, 186 N.E.2d 481, 484]; *Luckett* v. *Cowser* (1968) 39 Wis.2d 224 [159 N.W.2d 94, 97]).

In an Arizona case, the insured had an operator's policy which covered him only when he was driving nonowned automobiles. The policy had the blanket provision. The court there followed *Dearhart,* and held the blanket provision inapplicable when the insured acquired a new car with which he promptly had an accident. There was no coverage "since the stated prerequisite for coverage, the insured's ownership of an automobile or automo-

biles insured under the policy, is not met." (*Reserve Insurance Co.* v. *Staats* (1969) 9 Ariz.App. 410 [453 P.2d 239, 242].)

So, here, the trial court correctly held that Hubbard's policy did not provide coverage since the respondent insurance company did not insure any other automobiles at the time the Firebird was acquired. It is thus unnecessary to consider the effect of the transfer of title to Powell.

The judgment is affirmed.

Feinerman, P. J., and Ashby, J., concurred.