232 N.J. Super. 406 (1989)
557 A.2d 661
BRIAN CALDWELL, PLAINTIFF-APPELLANT
v.
ROBERT S. KLINE, DIRECTOR OF THE NEW JERSEY DIVISION OF MOTOR VEHICLES, UNSATISFIED CLAIM AND JUDGMENT BOARD, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted February 28, 1989.
Decided April 13, 1989.
*407 Before Judges ANTELL, BROCHIN and CONLEY, t/a.
Ira A. Schwartz, attorney for appellant (Harry S. Karpen, on the brief).
Beattie, Padovano, Breslin, Dunn & Kafafian, attorneys for respondents (Brian R. Martinotti, on the brief).
The opinion of the Court was delivered by CONLEY, J.S.C., (temporarily assigned).
Plaintiff pedestrian was struck by a hit-and-run motorist on November 5, 1985. As a result, he filed a complaint against the Unsatisfied Claim and Judgment Fund. Following a jury trial on the issue of damages, a verdict in the amount of $25,000 was returned. Thereafter, as required by N.J.S.A. 39:6-70 and 78, a hearing on the issue of plaintiff's eligibility was conducted by the trial court. Concluding plaintiff was not qualified for fund payments because at the time of the accident he owned an uninsured motor vehicle, the court dismissed the complaint. On *408 appeal, plaintiff argues the disqualification does not apply because his vehicle was inoperable.
The facts are not in dispute. At the time of the accident, plaintiff owned a 1974 Pontiac Grand Prix. It was registered and had current license plates. Prior to September 1985, plaintiff had operated the vehicle on a regular basis. Towards the end of September, the car blew a rod in the engine. It was towed to a garage for repair. Subsequent to the accident, the engine was repaired, plaintiff paid $400.00 and the vehicle was back on the road. At the time of the accident the vehicle had not yet been repaired because, according to plaintiff, he could not then afford it. Though plaintiff testified that the car was in the repair shop from the end of September to February 1986, the trial court made no findings of fact as to this but noted no supporting documents had been produced at the hearing, and referred to a post-hearing affidavit of an auto mechanic who could not recall the dates the car was in his garage.
There was no dispute that at the time of the accident the car, though registered, had no insurance. The record is not clear, however, as to whether, as contended by plaintiff, he had had insurance in September but let it lapse while the car was in the shop or, as the insurance documents indicate, his policy had been cancelled in January 1985, long before the break down and for reasons unrelated to its temporary inoperability.
It is the vehicle's temporary inoperability that plaintiff claims removes him from the disqualification. In pertinent part, N.J.S.A. 39:6-78 provides that no judgment may be entered against the Fund unless the applicant demonstrates that at the time of the accident he was not "the owner or registrant of an uninsured motor vehicle ...". N.J.S.A. 39:6-78(c). See also N.J.S.A. 39-6:70(d).
"Uninsured motor vehicle" is defined as a motor vehicle without an insurance policy meeting the requirements of the "Motor Vehicle Security  Responsibility Law". N.J.S.A. 39:6-62. "Motor vehicle" is not further defined in the Unsatisfied *409 Claim and Judgment Fund. N.J.S.A. 39:1-1, however, generally defines "motor vehicle" as including "all vehicles propelled otherwise than by muscular power, excepting such vehicles as run only upon rails or tracks and motorized bicycles". It defines "vehicle" as "every device in, upon or by which a person or property is or may be transported upon a highway, excepting devices moved by human power or used exclusively upon stationary rails or tracks" [emphasis added].
Focusing upon the "is or may be transported" language, we held in State v. DeMarco, 157 N.J. Super. 341 (App.Div. 1978), that a vehicle in a state of partial disassembly in a repair shop was a "motor vehicle" within the meaning of N.J.S.A. 39:10-6 requiring certificates of ownership and registration. We said "a vehicle does not lose its character as such merely because it is temporarily inoperable," id. at 348, and found significant the fact that the owner of the shop was in the process of repairing the vehicle so that it could become operable. Id.
Similarly, plaintiff's vehicle was in the process of being repaired. Under the definition of "motor vehicle" in N.J.S.A. 39:1-1, as construed in State v. DeMarco, it did not lose its character as a motor vehicle because of its temporary inoperability.
The Supreme Court, however, has held the term "uninsured motor vehicle" in the Unsatisfied Claims and Judgment Fund law is synonymous with the term "uninsured automobile" in N.J.S.A. 17:28-1.1 requiring uninsured/underinsured motorist insurance. Gorton v. Reliance Ins. Co., 77 N.J. 563, 572 (1978). Thus, we must consider the definition of that term. We concluded in Government Employers' Ins. Co. v. Daniels, 180 N.J. Super. 227 (App.Div. 1981) that the Legislature intended "uninsured motor vehicle" to include vehicles which were:
registered or capable of registration and which were intended to be operated or could be operated on the public highway of this State subject to the registration statute. N.J.S.A. 39:3-4 [180 N.J. Super. at 231; emphasis added].
"Motor vehicle", then, within the context of "uninsured motor vehicle", includes vehicles which either are or can be registered *410 and which are intended to be, or can be, operated on the public roads.
We do not view this definition to be greatly different from the definition of "motor vehicle" in N.J.S.A. 39:1-1. And, just as plaintiff's vehicle satisfies that definition notwithstanding its temporary inoperability, so too does it satisfy the "uninsured motor vehicle" definition set forth in Government Employers. The vehicle was not only capable of being registered but was in fact registered. Moreover, plaintiff intended to continue operating it and, with the $400 repair, it could be operated. Indeed, shortly after the accident the vehicle was back on the road.
We are mindful that the Unsatisfied Claim and Judgment Fund is remedial legislation enacted out of concern over the economic hardship imposed upon persons sustaining injuries caused by financially irresponsible and uninsured motorists where there is no other source of compensation. Dixon v. Gassert, 26 N.J. 1, 5 (1958). However, "while liberality of construction of remedial legislation is desirable, we cannot ignore the plain meaning of the language employed by the Legislature", Wormack v. Howard, 33 N.J. 139, 142 (1960), and note the statute was not intended to make every claimant whole. Id. at 143. See Douglas v. Harris, 35 N.J. 270 (1961).
Moreover, we must construe the Unsatisfied Claim and Judgment Fund law in pari materia with the uninsured/underinsured motorist law, N.J.S.A. 17:28-1.1. Transport of New Jersey v. Watler, 161 N.J. Super. 453, 458-460 (App.Div. 1978), aff'd as modified 79 N.J. 400 (1979); Beltran v. Waddington, 155 N.J. Super. 264, 268 (App.Div. 1978). In this respect, the disqualification under N.J.S.A. 39:6-70(d) and 78(c) of pedestrians who own uninsured vehicles was an effort by the Legislature to persuade such owners to maintain the insurance required under N.J.S.A. 17:28-1.1 to prevent a drain on the Fund. Transport of New Jersey, supra, 161 N.J. Super. at 460. See Ross v. Transport of New Jersey, 114 N.J. 132 (1989); Motor Club of America Ins. Co. v. Phillips, 66 N.J. 277, 284-285 *411 (1974). The class of people excluded from Fund claims under N.J.S.A. 39:6-70(d) and 78(c) is indicative of that policy.
In this respect, we find the amendment to N.J.S.A. 39:6-70(c) and 78(d) in 1983 significant. Prior thereto 70(d) and 78(c) required proof that at the time of the accident the claimant was not "operating or riding in an uninsured motor vehicle owned by him". The focus, then, of this disqualification was not upon ownership but rather actual operation or use. See Manzo v. Eddinfield, 126 N.J. Super. 20, 23-24 (App.Div. 1973); Stupin v. Sanchez, 113 N.J. Super. 84, 85-86 (App.Div. 1971), aff'd o.b. 59 N.J. 240 (1971); Gilbert v. Unsatisfied Claim, etc., Bd., 85 N.J. Super. 143, 150-151 (App.Div. 1964), certif. den. 44 N.J. 403 (1965).
In Robson v. Rodriquez, 26 N.J. 517 (1958), the distinction between ownership and actual operation/use was challenged on the grounds there was no rational basis for excluding a person when operating or riding in his uninsured vehicle yet permitting recovery from the Fund to an uninsured owner who was not actually operating or riding in his vehicle. In sustaining the constitutionality of the classification, the court said:
It is also conceivable that the Legislature did not wish to make mere ownership of an uninsured motor vehicle the test of exclusion, as it may have considered the possibility that an uninsured owner might permit his vehicle to be operated by an insured driver when the owner is not present. Or that the vehicle might be damaged when not in operation  when it is parked or garaged. [Id. at 525-526; emphasis added].
Thus, prior to the amendment in 1983 if an uninsured motor vehicle owned by a claimant was parked, garaged, damaged or otherwise not in use and not involved in the accident, Fund payments would be available to the owner, even though the required insurance had not been purchased.
The 1983 amendment, however, removed the focus of operation/use and broadened the disqualification to all owners of uninsured motor vehicle. Thus, while prior thereto it could be found the intent was not to disqualify an owner whose uninsured vehicle was garaged or otherwise not operational, the contrary can be said was intended by the amendment.
*412 We do not mean to suggest an owner of a motor vehicle who has taken the vehicle off the road, for whatever reason, but with no intent of operating it, who has for instance removed the plates and registration, disconnected the batteries and the like, or has junked or abandoned the vehicle and, as a result, caused the insurance to lapse, would be disqualified. Construction of the statute that would compel, through disqualification, maintenance of automobile insurance under these circumstances would extend its scope beyond that intended by the Legislature. An owner without an intent to operate his vehicle, whether it be because of temporary inoperability or otherwise, is not the type of person the Legislature wanted to exclude. Without the intent to operate and without registration and license plates, the vehicle could be no danger to anyone. Moreover, when the absence of insurance is the result of a decision to remove the vehicle from operation, there can be no concern of injury by a financially irresponsible or uninsured motorist.
State v. DeMarco, supra, 157 N.J. Super. 341, illustrates this distinction. As we have said previously, the court found a partially disassembled inoperable vehicle was nonetheless a "motor vehicle", in part because the owner was in the process of making it operable. On the other hand, in the same case a second vehicle that was no more than a shell, was not in the process of being repaired and was not intended to be repaired, was not a "motor vehicle". The first is much like plaintiff's vehicle here, the second is similar to a junked or abandoned vehicle.
This distinction is further illustrated by contrasting Civil Service Employees Insurance Company v. Wilson, 222 Cal. App.2d 519, 35 Cal. Rptr. 304 (1963), relied on by plaintiff, with Williams v. Standard Accident Insurance Company, 158 Cal. App.2d 506, 322 P.2d 1026 (1958), relied on by defendant. In Civil Service Employees Insurance Company, the vehicle found not to fall within an insurance policy definition of "motor vehicle", was "a total mess. People had come and taken the dashboard out, the seats, the starter, the generator, everything." *413 35 Cal. Rptr. at 306. The tires were torn, it had never been driven, had not been licensed and, the court found, no one had the intent to repair, license or operate it. Id. On the other hand, the vehicle in Williams, though in disrepair when purchased by plaintiff, was in the process of being repaired and, a few months thereafter, was registered and operable. Within the context of an automobile policy, the Williams vehicle was considered a "motor vehicle" at the time it was in disrepair notwithstanding its temporary inoperability.
Finally though not cited by either party, we have considered Fortune Insurance Company v. Oehme, 453 So.2d 920 (Fla.Ct. App. 1984) and find it instructive. At issue was whether an uninsured, dilapidated or inoperable vehicle is a "motor vehicle" for the purposes of determining whether PIP benefits are available to a pedestrian who owned the vehicle at the time of his accident. Finding the issue to be one of fact, the court considered the following factors: length and extent of inoperability, whether the vehicle was in storage before being repaired, whether the owner intended to maintain it for use, whether the vehicle was currently registered and licensed, and whether insurance lapsed as a result of factors unrelated to its inoperability. There, although the vehicle remained registered and licensed, and although the repair work was relatively minor and the insurance had lapsed for other reasons (inadvertence), the court found an intent on the part of plaintiff to abandon the vehicle evidenced by its withdrawal from the road and storage in his backyard. Thus PIP benefits were not precluded.
Here, while the vehicle was temporarily inoperable and while a blown engine rod might be considered more than a minor repair job, plaintiff's intent was to have the repairs made and to continue operating it. There was no indication of abandonment, storage or the like. Moreover, as we have previously noted, an inference could be drawn that the uninsured status of the vehicle was unrelated to the breakdown, indeed had occurred several months before. We note, in this respect, that several *414 months of operation subsequent to the repairs occurred before the required insurance was obtained.
Under these circumstances we agree with the trial court that plaintiff's uninsured vehicle was a motor vehicle and thus he is disqualified for Fund payments pursuant to N.J.S.A. 39:6-78(c). The judgment below dismissing the complaint is affirmed.