35 F.3d 570
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
AETNA CASUALTY AND SURETY COMPANY, INC., Plaintiff-Appellee,
v.
Philip L. MAGNO, Defendant,
and
George E. Moore, Guardian Ad Litem; Judy Ruth Mullin;
Pearl Severin; George E. Moore, Administrator of
the Estate of Dennis Ray Rigsby, et al.,
Defendants-Appellants.
 Nos. 92-55346, 92-55347.
 United States Court of Appeals, Ninth Circuit.
 Submitted Sept. 2, 1993.*
Decided Sept. 9, 1994.
 
 1
 Before: BRUNETTI, KOZINSKI and BOGGS** Circuit Judges.
 
 
 2
 MEMORANDUM***
 
 
 3
 Phillip Magno was insured by Aetna Casualty and Surety Company ("Aetna") under a basic apartment package policy. On August 6, 1984, six months after the insurance was taken out, Magno shot and killed Dennis Ray Rigsby at a hotel that Magno was in the process of purchasing. Rigsby's children secured a $120,000 judgment against Magno. While that suit was pending, Aetna filed the instant complaint in the United States District Court for the Central District of California, asking for a declaration that it had neither a duty to defend nor a duty to indemnify Magno in that suit. The district court granted summary judgment in favor of Aetna, and the Rigsby children, their guardian, and the administrator of Rigsby's estate, as well as Magno ("appellants") now appeal. We hold that the language of the Aetna policy unmistakably did not cover Magno's action and we thus affirm the decision of the district court.
 
 I.
 
 4
 Under Section II, Part Four of the policy, Magno was covered for "bodily injury or property damage"; under Part Five of that same section, there was coverage for "personal injury or advertising injury." Appellants now contend that the district court found in Aetna's favor only with regard to Part Four, the "bodily injury" coverage, but appellants assert that Magno was also covered under Part Five, the "personal injury" coverage, which they say the district court did not consider. (The other appellants, of course, are supporting the ostensible interests of the patricide, Magno, so that a deeper pocket will be available for the satisfaction of their judgment against Magno.)
 
 
 5
 The bodily injury coverage requires that the injury must be "caused by an occurrence and arising out of the ownership, maintenance, or use of the insured premises and all operations ... of the named insured conducted at or from the insured premises...." "Occurrence" "means an accident ... which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured...." Finally, Part Four specifically excludes "damage arising out of operations on or from premises (other than insured premises) owned by, rented to or controlled by the named insured...."
 
 
 6
 "Personal injury" coverage, on the other hand, applies to damages "arising out of the conduct of the named insured's business" and "arising out of ...
 
 
 7
 1. false arrest, detention, imprisonment, or malicious prosecution;
 
 
 8
 2. a publication or utterance ... of a libel or slander or other defamatory or disparaging material ...;
 
 
 9
 3. wrongful entry or eviction or other invasion of the right of private occupancy."
 
 II.
 
 10
 Under California law it is the insured's burden to prove that a claim comes within the basic coverage of the policy. Royal Globe Ins. Co. v. Whitaker, 181 Cal.App.3d 532, 537, 226 Cal.Rptr. 435 (1986). This burden is distinct from the general principle that the insurer bears the burden to prove that a claim falls within a purported exclusion from coverage. Gray v. Zurich Insurance Co., 65 Cal.2d 263, 54 Cal.Rptr. 104 (1966). With those principles in mind, we interpret the words of the insurance policy as a question of law. Continental Casualty Co. v. City of Richmond, 763 F.2d 1076, 1079 (9th Cir.1985). Despite a number of creative theories presented by appellants, the liability arising from Magno's killing of Rigsby[1] is plainly not within the coverage of the policy.
 
 
 11
 A. With regard to the Part Four coverage, such coverage arises only from the use of "the insured premises." There can be no serious contention that the Leven Oaks Hotel was an insured premises at the time the policy was issued, or that it had been added as an additional premises under the terms of the policy. Such additional premises are limited to "premises as to which the named insured acquires ownership or control and reports his intention to insure such premises under this policy and no other within 30 days after such acquisition...." It is undisputed that Magno did not own the Leven Oaks Hotel at the time of the killing, though he was engaged in activities to buy it. At no time prior to the killing did he report to Aetna any intention to insure the premises nor do the appellants even contend that Magno reported anything to Aetna within thirty days after the killing.[2] Therefore, either no acquisition occurred, or the notice required by the policy was not given, no matter on which of the possible dates the acquisition is dated.
 
 
 12
 Appellants' primary contention is that the apartment renter's policy provided Magno with automatic insurance coverage for any and every property that he might purchase or gain control of, for 30 days after such purchase or control. This argument is based on California cases involving the interpretation of automobile policies where some type of automatic coverage is plainly contemplated. See Birch v. Harbor Insurance Co., 126 Cal.App.2d 714, 272 P.2d 784 (4th Dist.1954); Velderrain v. Progressive Casualty Insurance Co., 177 Cal.App.3d 246, 223 Cal.Rptr. 1 (2d Dist.1986). These cases involve policies that specifically contemplate automatic coverage for certain new or replacement vehicles. In the Birch case, the policy itself even uses the term "including automatic insurance." 126 Cal.App.2d at 716, 272 P.2d at 785. There are no cases even hinting that such a principle applies to real property coverage, and no hint in the policy that automatic coverage is contemplated. The reason for that outcome is not difficult to comprehend. A company issuing a basic policy on a small apartment would no doubt be astonished to find that it had undertaken to insure the Empire State Building for the first 30 days after the renter had purchased it. Therefore, since the Leven Oaks Hotel was not an insured premises under the policy, appellants cannot prevail under Part Four.
 
 
 13
 B. With regard to Part Five, "personal injury," coverage, appellants assert that the district court did not adequately consider the point, in that it merely concluded that the shooting did not constitute a wrongful eviction or a personal injury under the terms of the policy.
 
 
 14
 Appellants claim a genuine issue of fact as to this issue, and further contend that the shooting was also a "wrongful entry" or "other invasion of the right of private occupancy."
 
 
 15
 We certainly give points for creativity to the argument that (1) the bullet's entering Rigsby's clothing and body was a "wrongful entry" onto property; and (2) that by going to the property of another person and killing that person, Magno committed a wrongful eviction of that person from his property or at least an "other invasion of the right of private occupancy" (presumably of this world). However, as was held in Waranch v. Gulf Ins. Co., 218 Cal.App.3d, 356, 266 Cal.Rptr. 827 (1990), the quoted language in a property policy applies only to real property-type claims. Every victim of murder or even battery suffers an "entry," "invasion," or "eviction" in some sense that is wrongful, but sensible construction of long-standing policy language does not permit such distortion of meaning. Under these circumstances, the ordinary meaning of the words of the policy must control, and the judgment of the district court is therefore AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 3(f)
 
 
 **
 The Honorable Danny J. Boggs, United States Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Magno was indicted on first degree murder and other charges, but was acquitted
 
 
 [2]
 Magno moved to "amend findings of fact and conclusions of law," asserting, in a conclusory declaration, that he had at some time between June 30 and August 6, 1984, contacted an Aetna agent and "inquired whether Aetna would be interested in insuring [the Leven Oaks]." The declaration admits that he was told "that Aetna did not insure buildings of that age." The district court correctly held that this was not of sufficient probative value to alter its judgment